**STATE of Missouri, Respondent,**

v.

**James H. SHELBY, Appellant.**

**No. 63240.**

Supreme Court of Missouri,
Division No. 1.

June 14, 1982.

Gary Gardner, Asst. Public Defender, Kansas City, for appellant.

Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

BYRON L. KINDER, Special Judge.

Approximately at 5:30 p. m. on December 6, 1979, two black men were observed chasing a white man in the 1300 block of East 37th Street in Kansas City, Missouri. The two black men caught up with the white man and began to beat him. The victim was heard to say, "Don't hurt me. I will give it to you." A shot was heard. One of the black men was seen going through the pockets of the victim. The police arrived on the scene, and the victim was found to be dead. He was later identified as Harold Christian. The medical examiner testified that the victim, Mr. Christian, had died as a result of a gunshot wound to the head.

Witnesses at the scene described the two assailants as black men, one of whom was short and the other tall. The tall man was

---

wearing a brown leather coat. The shorter of the two black men was known as a resident of the neighborhood where the occurrences took place. He was identified as Jerome "Squeeky" Milton. The identity of the taller of the two assailants was unknown.

On the 16th day of February, 1980, the Appellant was arrested in the City of St. Louis and transported to Kansas City. The Appellant was interrogated by Detective Jacob Lightfoot. Before any questioning of the Appellant was conducted he was read his rights pursuant to *Miranda v. Arizona.* At 7:30 p. m. on the sixteenth day of January the Appellant signed a *Miranda* waiver and made a statement.

In substance the confession was that the Appellant and Jerome "Squeeky" Milton had decided to rob two prostitutes who were new in the community and had no pimp to protect them. The prostitutes were found by the Appellant and "Squeeky" in the neighborhood where the occurrences mentioned above took place. The prostitutes escaped from the Appellant and "Squeeky." "Squeeky" suggested that they rob a white man who was walking nearby. The plan was that "Squeeky" was to grab the man in the front and the Appellant was to take his money from behind. When "Squeeky" accosted the man he resisted. "Squeeky" began to beat the victim on the head with a gun. The victim broke away. "Squeeky" and the Appellant overtook him and "Squeeky" shot him. The Appellant ran and "Squeeky" took the man's wallet which contained three or four hundred dollars. The Appellant stated that "Squeeky" gave him fifty dollars from the money taken from the victim.

Contemporaneously with making this confession the Appellant also confessed to shooting a man known as Marion Terrance "Man-Tan" Rhodes.

At trial the Appellant repudiated his confession. The Appellant claimed that some time during the evening of December 6, 1979, "El Dominic" Rhodes came to his home and asked the Appellant to leave with him. Appellant claimed that while he and "El Dominic" were driving around, they were flagged down by "Squeeky" and "Man-Tan." Appellant claimed that he overheard a conversation between "El Dominic," "Squeeky" and "Man-Tan" in which they discussed the robbing and shooting of a white man.

Appellant contended later that "El Dominic" Rhodes had threatened to kill Appellant's brother, "T.I.," unless the Appellant agreed to protect "El Dominic" from being apprehended and prosecuted for the crime involved in this case.

Appellant claimed that he had placed himself, in the confession, in the role of "El Dominic" and that he had left out any mention of "Man-Tan" who was the driver and lookout because "Man-Tan" was dead at the time of the confession.

The Appellant testified that he had been driving a church van in the company of his sister and fiancee at the time of the robbery and killing of Mr. Christian. This line of testimony was further supported by the testimony of the sister and fiancee. Both of these persons testified that at the time of the occurrences herein mentioned the Appellant was in fact with them.

The jury did not accept the Appellant's repudiation of the confession nor accept the alibi which he forwarded both by his testimony and that of his sister and fiancee. The verdict of guilty of murder in the first degree was returned by the jury, and the jury assessed the Appellant's punishment at life imprisonment. A motion for new trial was filed. The motion for new trial was overruled, and the Appellant was sentenced on April 3, 1981, to life imprisonment. On April 9, 1981, a notice of appeal was filed in this Court.

In the opening portion of the prosecutor's argument, at the close of evidence in the case, the following argument, ruling, and objection was made:

MR. HUMPHREY: " * * * So, it doesn't make any difference whether you believe the tall man pulled the trigger as the State's people testified or doesn't make any difference if you believe what he said

in his signed statement, so long as one or the other killed Harold Christian in the commission of a robbery. And, *if you believe that based on this evidence, he is guilty* of Murder in the First Degree.

MR. ROGERS: I object to that, that misstates the burden of proof they must find and believe that from the evidence beyond a reasonable doubt.

THE COURT: This is argument; your objection is overruled." (Emphasis added.)

During the rebuttal portion of the prosecuting attorney's closing argument, the following statement, objection, and ruling was made.

MR. HUMPHREY: " * * * You came in here and you swore on Monday—you didn't know anything about this case and you swore you would be guided only by the evidence. You took that oath. So don't let it be said, 'Oh we think he did it but they didn't prove it.' *If you think he did it and that thought is reasonable, beyond a reasonable doubt, then we have proved it.*

MR. ROGERS: Objection, Your Honor, that misstates the law, that is improper argument. It shifts the burden of proof and it's an attempt to define the concept of reasonable doubt. It's clearly improper argument.

THE COURT: Overruled.

MR. HUMPHREY: And *if that thought is reasonable*, the only thing that has happened when you took your oath, you would be guided by the evidence, you didn't believe him guilty or innocent was the evidence in this case. So, *if you believe him to be guilty beyond a reasonable doubt*, it's because of the evidence, *then he's guilty beyond a reasonable doubt.*" (Emphasis added.)

In *State v. Burnfin*, 606 S.W.2d 629, 631, the prosecutor, who also prosecuted the instant case, made the following closing argument:

" * * * *If you think he did it and if that thought is reasonable, we have proved him guilty*, because you said when you took this witness box, we have no preju-

dice, we have no pre-convictions . . . And if you have the *thought, after hearing this evidence, that he's guilty and that thought is reasonable, we have proved him guilty, haven't we?* What else would cause you to think that way but the evidence." (Emphasis added.)

No objection was made by defense counsel to this argument. This Court found upon reviewing the case under the plain error rule, that while the argument of counsel was an erroneous statement of the law that it did not result in a manifest injustice or miscarriage of justice pursuant to Rule 29.12.

A year later the same prosecutor who prosecuted the instant case, in the case of *State v. Jones*, reported at 615 S.W.2d 416, 418 (Mo.1981), tried a variation on the theme of the Burnfin case with the following argument:

" * * * You can't say that, because each one of you swore before Almighty God before this case started that 'I have no belief one way or another about his guilt or innocence.' Didn't you take that oath? You did. You started from zero, not believing anything. And if you now believe he did it, the only thing that has happened from the time you took that oath to this minute is the State's case and evidence. You're not permitted to say, 'I don't believe they proved it,' because if you believe he did it and that belief is reasonable, he is guilty beyond a reasonable doubt.

* * * Okay, now we are asking you, if you believe that he is presumed innocent and nobody believes he is guilty, right, so we start out believing nothing, neither that he is guilty, we believe he is not guilty. So then you start out from zero. Then you get to the point where you form the belief that he is guilty. If the only thing that has happened from the time you started the case to this point is the State's evidence, *and if you believe he is guilty from the State's evidence and that's all that has happened, you have to be finding him guilty because of the State's evidence. If the belief that he is*

*guilty is reasonable, you have found him guilty beyond a reasonable doubt."* (Emphasis added.)

This Court held that: First, the prosecutor argued that reasonable belief satisfied the requirement of proof beyond a reasonable doubt and that the prosecutor strayed into the civil language defining burden of proof. Secondly, as in the case at hand, the prosecutor's statement was promptly objected to and the objection was overruled, giving the argument the imprimatur of the trial court. Third, the Court found that the prosecutor was not content with passing reference to the subject upon overruling the defendant's objection but proceeded to repeat his erroneous definition of reasonable doubt, as here.

The statements of counsel in the present case were not an attempt to discuss "reasonable doubt." Rather it represents an attempt to define "reasonable doubt" which is a function of the Judge and not of counsel.

 While both the prosecutor and the defense attorney may by argument point out that every doubt is not reasonable doubt, they are precluded from attempting to define that term in any manner other than that it is defined in MAI–CR 2d 2.20. Further, "The law does not foreclose the prosecution from arguing the facts as they pertain to the Court's instruction, nor prevent pointing out to a jury that some slight doubt or some issue or fact is not necessarily a reasonable doubt." *State v. Wilbon,* 561 S.W.2d 133, 134 (Mo.App.1978).

The ruling in the *Jones* case surely was a clear message to all counsel that the courts would no longer permit arguments of the type made herein to be given to juries. The message should have been abundantly clear to counsel in this case since he was the very person who made the erroneous argument in the *Jones* case. Prosecutors as well as defense counsels should be advised that arguments attempting to define reasonable doubt represent reversible error. "Reasonable doubt is reasonable doubt and that is about all that can be said in regard to it."

*State v. Van,* 543 S.W.2d 827, 830 (Mo.App. 1976).

Reversed and remanded.

MORGAN, P. J., BARDGETT, J., and MOORE, Special Judge, concur.

RENDLEN, J., concurs in result.