No. 99-120

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 129

299 Mont. 517

1 P.3d 946

STATE OF MONTANA,

Plaintiff and Respondent,

v.

WILLIAM JOSEPH OSTERLOTH,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr.; Cannon & Sheehy, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General; Helena, Montana

Mike McGrath, Lewis and Clark County Attorney; Carolyn Clemens,

Deputy Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs: December 9, 1999

Decided: May 11, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 William Osterloth (Osterloth) appeals from the judgment and commitment entered by the First Judicial District Court, Lewis and Clark County, sentencing him to 30 years imprisonment at the Montana State Prison (MSP), with 25 years suspended on conditions, and from its order denying his motion to withdraw his guilty plea. We affirm and remand with instructions.

¶2 We restate the issues on appeal as follows:

¶3 1. Did the District Court abuse its discretion in denying Osterloth's motion to withdraw his guilty plea?

¶4 2. Was Osterloth denied his Sixth Amendment right to effective assistance of counsel in the presentation of his motion to withdraw?

¶5 3. Did the District Court err in sentencing Osterloth without a psychosexual evaluation prepared by a qualified evaluator and in continuing his sentencing to allow him an opportunity to succeed in a community-based sex offender treatment program?

¶6 4. Did the District Court err in sentencing Osterloth by failing to comply with statutory requirements?

## BACKGROUND

¶7 On July 10, 1997, the State of Montana (State) charged Osterloth by information with one count of felony sexual assault under §§ 45-5-502(1), (3) and (5), MCA, based on allegations that he sexually molested two of his nephews. Osterloth pled not guilty.

¶8 Osterloth subsequently moved to suppress a statement he had made to Detective Sam McCormack, and, after a hearing, the District Court denied his motion. At a change of plea hearing on October 30, 1997, Osterloth changed his plea to guilty. The District Court accepted the guilty plea, ordered a presentence investigation report with a sexual offender evaluation and scheduled sentencing for January 8, 1998. Osterloth moved "to allow the defense to have a sex offender evaluation done of the Defendant by a sex offender psychotherapist of the defense's choosing at county expense" and the District Court granted the motion.

¶9 Osterloth chose therapist Kevin Wyse (Wyse) to conduct the sex offender evaluation. Wyse determined that Osterloth "is at moderately high risk for sexual reoffense and is moderately amenable to sex offender treatment." On that basis, he recommended that "Osterloth should participate in an intensive outpatient sex offender treatment program" on a six-month trial basis. Wyse explained that "[i]f Mr. Osterloth is successful in completing this six month trial period, he should remain in this sexual offender treatment program for a period of no less than three years. Termination from treatment will be based on the opinions of his primary treatment therapist and his probation officer." Wyse also recommended that, "[i]f Mr. Osterloth cannot succeed in an intensive outpatient program, based on the opinion of his primary treatment therapist or his probation officer, he should be incarcerated at the Montana State Prison . . . ."

]¶10 The State presented Wyse's recommendations at the sentencing hearing rescheduled to February 12, 1998. On the basis of those recommendations, the State and Osterloth jointly requested a continuance for several months to give Osterloth an opportunity to succeed at community-based sex offender treatment. In the event the treatment was unsuccessful, the State advised it would seek a prison sentence. The District Court accepted the recommendations and continued the sentencing hearing to August 6, 1998.

Sentencing was later rescheduled at the parties' request.

¶11 Wyse terminated Osterloth from the community sex offender treatment program on September 1, 1998. He reported that Osterloth "has been either unwilling or unable to honestly report and take responsibility for the inappropriate sexual behaviors which led to the crime of Felony Sexual Assault."

¶12 The District Court resumed the sentencing hearing on October 16, 1998, at which time Osterloth moved to withdraw his guilty plea. The primary basis for the motion was that he was given poor advice by his attorney which he would have rejected if he were not so easily led by authority figures. He also requested, and obtained, a psychological evaluation for purposes of supporting his contention.

¶13 After completion of the psychological evaluation and briefing on Osterloth's motion, the District Court deemed the motion submitted. It subsequently denied Osterloth's motion to withdraw on the basis that the "psychological evaluation produced no finding to show that the Court, or Defendant's attorney, somehow improperly influenced the Defendant." The court also recognized Osterloth's concession that its change of plea interrogation had been adequate, observed that the guilty plea was not the result of a plea bargain and concluded the motion to withdraw--filed nearly 12 months after Osterloth entered his guilty plea--was not prompt.

¶14 The District Court ultimately sentenced Osterloth to 30 years imprisonment at the MSP, with 25 years suspended on conditions, and ordered him ineligible for parole until he completed both phases of the MSP's sex offender treatment program. Osterloth appeals.

## *DISCUSSION*

¶15 **1. Did the District Court abuse its discretion in denying Osterloth's motion to withdraw his guilty plea?**

¶16 A district court may permit a defendant to withdraw his guilty plea at any time, before or after judgment, for good cause shown. Section 46-16-105(2), MCA.

A change of plea will ordinarily be permitted if it fairly appears that the defendant was in ignorance of his rights and of the consequences of his act, or if influenced unduly and improperly either by hope or fear in making it, or if it appears that the plea was entered

under some mistake or misapprehension. If there is any doubt that a plea is involuntary, the doubt should be resolved in the defendant's favor.

*State v. Schaff, 1998 MT 104, ¶ 17, 288 Mont. 421, ¶ 17, 958 P.2d 682, ¶ 17 (citation omitted).*

¶17 In its order denying Osterloth's motion to withdraw, the District Court first properly quoted the *Schaff* principles. In discussing the reasons for its decision, however, it stated that "withdrawal was permissible *only* if it fairly appears that the defendant was ignorant of his rights and the consequences of his guilty plea, or if he was influenced unduly or improperly by hope or fear in the entry of his guilty plea, or if the guilty plea was entered by some mistake or misapprehension." (Emphasis added.)

¶18 Osterloth argues at the outset that, in substituting "only" for "ordinary" in determining whether to permit his plea to be withdrawn, the District Court misapplied *Schaff*. Given the language in *Schaff*, it is apparent that the District Court erroneously summarized *Schaff* in its second reference to that decision. This is not to say, however, that this error means the District Court necessarily misapplied the *Schaff* principles.

¶19 In this regard, the record reflects that Osterloth's motion was based primarily on his contention that his plea was involuntary because he is easily influenced by authority figures, namely, his attorney. He obtained a psychological evaluation in hopes of supporting his contention but, as the District Court found, that "evaluation produced no finding to show that the Court, or Defendant's attorney, somehow improperly influenced [him]." That finding, unchallenged by Osterloth, was the foundation for the court's later determination there was no reason, let alone any sound reason, to allow withdrawal of Osterloth's plea. The District Court went on to observe that, while *Schaff* requires any doubt regarding the voluntary nature of the plea to be resolved in the defendant's favor, "[i]n this case, there is no doubt that needs to be resolved one way or the other." Based on the record before us, Osterloth has not established that the District Court's error in summarizing the *Schaff* principles resulted in misapplication of *Schaff*.

¶20 In a somewhat similar vein, Osterloth contends his plea was involuntary because he was influenced unduly and improperly by hope he would be placed in a community-based sex offender treatment program and avoid the mandatory minimum two-year sentence. He urges that he moved to withdraw his guilty plea because community-based sex offender treatment was no longer available. The problem with Osterloth's argument is that it was not the basis for his motion to withdraw in the District Court. We do not address issues or theories raised for the first time on appeal. *Schaff*, ¶ 26. Therefore, we decline to address

this argument further.

¶21 We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *Schaff*, ¶ 18 (citation omitted). In determining whether an abuse of discretion occurred, we consider three factors:

>    (1) the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea;

>    (2) the promptness with which the defendant attempts to withdraw the plea; and

>    (3) the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

*Schaff, ¶ 18 (citations omitted).*

¶22 The District Court briefly addressed these factors in its order. It observed that Osterloth had conceded the adequacy of its interrogation and observed there was no plea bargain in this case. Finally, the court noted that Osterloth's motion was filed nearly 12 months after he entered his guilty plea and concluded that such delay negated any notion of promptness.

¶23 Here, the parties do not dispute that the District Court's interrogation at the time the plea was entered was adequate and no plea agreement was involved. Therefore, the first and third factors in our review of the court's decision are not at issue here.

¶24 Osterloth contends that his motion to withdraw was timely because he filed it prior to his sentencing and less than a year after he entered his guilty plea. In this regard, we long have held that a request to withdraw a guilty plea must be made within a reasonable time. *See State v. Nance* (1947), 120 Mont. 152, 165, 184 P.2d 554, 561. We have declined to adopt specific parameters defining the timeliness of a motion to withdraw because each case presents unique factual circumstances. *State v. Enoch* (1994), 269 Mont. 8, 12, 887 P.2d 175, 178. As a general rule, however, a motion to withdraw a guilty plea filed over a year after entry of the plea is untimely. *State v. Reynolds* (1992), 253 Mont. 386, 391, 833 P.2d 153, 156 (citation omitted). On the other hand, we have upheld a district court's denial of a motion to withdraw a guilty plea because it was untimely when the motion was filed only five months after entry of the plea. *See State v. Coggins* (1993), 257 Mont. 440,

441-42, 849 P.2d 1033, 1034-35.

¶25 In the present case, Osterloth entered his guilty plea on October 30, 1997. After a continuance of sentencing to allow him an opportunity to succeed at community-based sex offender treatment, followed by termination from that treatment, he moved to withdraw his guilty plea when the District Court resumed the sentencing hearing on October 16, 1998.

¶26 Osterloth's primary argument for withdrawing his guilty plea in the District Court was that his plea was involuntary because he was easily influenced by authority figures such as the court and his attorney. The record reflects, however, that Osterloth first argued he was easily influenced by authority figures on August 22, 1997, when he moved to suppress a statement he had made to Detective McCormack. After this motion was denied, Osterloth changed his plea to guilty. Thus, Osterloth was aware of his purported susceptibility to influence by authority figures prior to changing his plea, prior to the initial sentencing hearing on February 12, 1998, and well over a year before he asserted it as grounds for his motion to withdraw his guilty plea. Moreover, at the change of plea hearing on October 30, 1997, the court ordered Osterloth to have weekly contact with his attorney and, as a result, he had numerous opportunities to initiate the withdrawal of his guilty plea without waiting until the final sentencing hearing almost a year later.

¶27 The case before us is analogous to *Coggins*. There, the defendant stated that "he knew from '[t]he minute [he] made the plea' that it was a mistake." *Coggins*, 257 Mont. at 443, 849 P.2d at 1035. Here, Osterloth similarly knew of his purported susceptibility to influence by authority figures--the primary grounds for his motion to withdraw--at the time he entered his plea. In *Coggins*, 257 Mont. at 443, 849 P.2d at 1035, we observed that, although the defendant had spent some time out of state with his ill mother and a month in alcohol treatment, there was no indication that he was unable to contact his attorney during those periods. Here, the District Court ordered Osterloth on October 30, 1997, to maintain weekly contact with his attorney. In addition, as was the case in *Coggins*, Osterloth participated in the preparation of the presentence investigation report between the time he entered his guilty plea and the time he sought to withdraw it. *See Coggins*, 257 Mont. at 443, 849 P.2d at 1035. We conclude, therefore, that Osterloth's motion to withdraw his guilty plea was untimely.

¶28 We hold the District Court did not abuse its discretion in denying Osterloth's motion to withdraw his guilty plea.

**¶29 2. Was Osterloth denied his Sixth Amendment right to effective assistance of counsel in the presentation of his motion to withdraw?**

¶30 In evaluating ineffective assistance of counsel claims, this Court utilizes the two-prong test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *State v. Senn* (1990), 244 Mont. 56, 58-59, 795 P.2d 973, 975 (citations omitted). The defendant must establish that counsel's performance was deficient and that the deficient performance prejudiced him. *Senn*, 244 Mont. at 59, 795 P.2d at 975 (citations omitted).

¶31 Osterloth contends he was denied effective assistance of counsel when his lawyer failed to premise the motion to withdraw on his having entered the guilty plea out of hope of avoiding the mandatory minimum sentence for sexual assault by being admitted to a community-based sex offender treatment program and fear of incarceration. This unasserted basis for the motion to withdraw apparently arises from the District Court's observation that Osterloth "wants to withdraw his guilty plea simply because it now appears that he may not be amenable to community sexual offender treatment." He relies on *Schaff* for the proposition that an assertion that a guilty plea was influenced by hope or fear is a proper basis for withdrawing a plea and, therefore, such an argument ordinarily would have resulted in the District Court allowing withdrawal of his plea.

¶32 Here, the District Court advised Osterloth, at the change of plea hearing, of the minimum and maximum sentences for the offense and that it would not be bound by the recommendations of the presentence investigation or the sexual offender evaluation. Even assuming Osterloth hoped to avoid incarceration at the time he entered the guilty plea, "a plea is not involuntary simply because it was entered to avoid a greater punishment." *State v. Milinovich* (1994), 269 Mont. 68, 71, 887 P.2d 214, 216 (citation omitted). Moreover, we have previously stated that counsel's performance cannot be deficient for failure to raise an issue which lacks merit. *See, e.g., State v. Baker* (1995), 272 Mont. 273, 283, 901 P.2d 54, 60; *State v. Hildreth* (1994), 267 Mont. 423, 432-33, 884 P.2d 771, 777. Because Osterloth's plea was not involuntary even if entered to avoid greater punishment, his counsel's performance was not deficient in failing to raise the issue in Osterloth's motion to withdraw.

¶33 Osterloth having failed to establish the first prong of the *Strickland* test, we need not address the second prong. *See State v. Sellner* (1997), 286 Mont. 397, 403, 951 P.2d 996, 999. We hold Osterloth was not denied his Sixth Amendment right to effective assistance

of counsel in the presentation of his motion to withdraw.

**¶34 3. Did the District Court err in sentencing Osterloth without a psychosexual evaluation prepared by a qualified evaluator and in continuing his sentencing to allow him an opportunity to succeed in a community-based sex offender treatment program?**

¶35 Osterloth contends the District Court erred in sentencing him without a psychosexual evaluation prepared by a Montana Sex Offender Treatment Association (MSOTA) provider or other qualified therapist as required by § 46-18-111(1), MCA. He also urges the District Court erred in imposing an " 'interim sentence' or a condition of Osterloth continuing release on bail that he attend and participate in sex offender treatment" because it was not authorized by statute to do so and because § 46-18-115, MCA, requires the court to conduct a sentencing hearing without unreasonable delay. The State responds that Osterloth waived his right to assert these alleged errors on appeal by failing to object in the District Court.

¶36 Under § 46-20-104(2), MCA, "this Court is precluded from considering an alleged error unless a timely objection was made . . . or unless the . . . criteria [of § 46-20-701(2), MCA,] are met." *State v. Schmalz*, 1998 MT 210, ¶ 12, 290 Mont. 420, ¶ 12, 964 P.2d 763, ¶ 12. Here, the record reflects that Osterloth did not object to Wyse conducting his psychosexual evaluation or to the District Court continuing his sentencing hearing to give him an opportunity to succeed in a community-based sex offender treatment program. Consequently, these arguments have not been properly preserved for appeal. *Schmalz*, ¶ 13. Nor does Osterloth assert that he can satisfy any of the requirements of § 46-20-701 (2), MCA. We conclude, therefore, that Osterloth waived the right to have this Court consider his arguments relating to Wyse's qualifications or the continued sentencing hearing.

**¶37 4. Did the District Court err in sentencing Osterloth by failing to comply with the statutory requirements?**

¶38 Osterloth contends that the District Court totally failed to comply with § 46-18-115 (6), MCA, which requires in felony cases that the court "specifically state all reasons for the sentence . . . in open court on the record and in the written judgment." As a result, he urges he is entitled to be resentenced. Osterloth is partially correct.

¶39 The District Court stated in open court that

> [t]he law is quite clear that you are required to get two years in prison just by pleading guilty. And last year, we went out on a limb that is available to not send you to prison, to allow you to stay in the community. We were willing to take that risk in the unusual case, which this is and was. And, unfortunately, it didn't work out. So with that being done, I cannot accept the risk to the other children in this community. So I will agree with [the probation and parole officer]. I will sentence you to 30 years in the State Prison. 25 of that will be suspended.

We conclude that these statements meet the § 46-18-115(6), MCA, requirement that the court state the reasons for the sentence in open court. The court did not set forth the reasons for the sentence imposed in its written judgment, however, and, to that extent, we conclude the District Court erred. Our conclusion does not require that Osterloth be resentenced, however.

¶40 "[T]he sentence orally pronounced from the bench in the presence of the defendant is the legally effective sentence and valid, final judgment" and the written judgment and commitment serves as evidence of the sentence orally pronounced. *State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, ¶ 40, 957 P.2d 9, ¶ 40. In *Lane*, we upheld a district court's nunc pro tunc order modifying its written judgment to conform to its oral sentence. *Lane*, ¶ 49. In subsequent cases where a written judgment did not conform to an oral sentence, we have remanded for modification of the written judgment. *See, e.g., State v. Waters*, 1999 MT 229, ¶ 35, 296 Mont. 101, ¶ 35, 987 P.2d 1142, ¶ 35; *State v. Simpson*, 1999 MT 259, ¶ 15, 296 Mont. 335, ¶ 15, 989 P.2d 361, ¶ 15. The same result is appropriate here.

¶41 Affirmed and remanded for entry of a modified written judgment setting forth the reasons for the sentence as stated in the District Court's oral judgment.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER