No. 97-704

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 379

**303 Mont. 507**

**16 P. 3d 391**

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MICHAEL A. STEWART,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Assistant Appellate Defender, Helena, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Jim Wheelis, Assistant Montana Attorney General, Helena, Montana; Fred R. Van Valkenburg, Missoula County Attorney, Robert Zimmerman, Assistant Missoula County Attorney, Missoula, Montana

Submitted on Briefs: March 16, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Michael Stewart (Stewart) was tried by a jury in the District Court for the Fourth
Judicial District, Missoula County, and found guilty of attempting to fraudulently obtain
dangerous drugs by altering a prescription from his doctor. On appeal, Stewart alleges
various instances of prosecutorial misconduct. We reverse and remand for further
proceedings consistent with this opinion.

¶2 The following issues are presented for review:

¶3 1. Whether the District Court erred in admitting the Soma prescription.

¶4 2. Whether the prosecutor's mention of Stewart's pretrial silence was improper.

¶5 3. Whether matters not objected to at trial should be reviewed under the plain error
doctrine.

¶6 4. Whether any error by the prosecution justifies a new trial.

¶7 Because we find Issue 1 dispositive and we are reversing and remanding for a new trial
on that issue, we only address Stewart's remaining allegations of error as guidance for the
new trial in this matter.

**Factual and Procedural Background**

¶8 On January 17, 1997, Stewart received three prescriptions from his physician. The first
prescription was for 30 tablets of Percocet, a narcotic painkiller. The second was for
Ultran, a non-narcotic pain reliever used to decrease a patient's reliance on the Percocet.

And the third was for 30 tablets of Soma, a muscle relaxant that helps with muscle spasms.

¶9 Stewart attempted to fill the Percocet and Ultran prescriptions at the Savmor pharmacy located in the Bi-Lo supermarket in Missoula. However, the pharmacist noticed that the number of tablets on the Percocet prescription had been changed from 30 to 80. The pharmacist refused to fill the prescription or to return the altered prescription to Stewart. Instead, he sent Stewart back to his doctor to obtain a new prescription.

¶10 When Stewart returned to the pharmacy, the pharmacist filled the valid second prescription for the 30 tablets of Percocet and the prescription for Ultran. After Stewart left, the pharmacist called the police to report the incident. An officer picked up the altered prescription and a copy of it was sent to Stewart's physician who confirmed that the prescription had indeed been altered.

¶11 On January 27, 1997, the State charged Stewart by Information with one count of attempting to fraudulently obtain dangerous drugs, a felony, in violation of §§ 45-9-104 and 106, MCA. Stewart pleaded not guilty and the case proceeded to trial on April 24, 1997. After a one-day trial, the jury found Stewart guilty. Stewart subsequently moved for a new trial alleging that the State had improperly introduced new evidence, but the District Court denied Stewart's motion and sentenced him to a three-year deferred imposition of sentence. Stewart appealed.

## Issue 1.

¶12 *Whether the District Court erred in admitting the Soma prescription.*

¶13 Stewart's defense was that his roommate or someone else in his apartment had altered the Percocet prescription without his knowledge prior to Stewart taking the prescription to be filled. During her opening statement, Stewart's attorney explained that when the Savmor pharmacist refused to fill the prescription, Stewart believed it was the doctor's handwriting that created the problem. Hence, Stewart asked the Savmor pharmacist to return the prescription to him so that he could take the prescription to the pharmacist at Shopko with whom Stewart had dealt before and who presumably would be better able to read the doctor's handwriting.

¶14 Prior to this time, the State had not obtained a copy of the Soma prescription. After this statement by Stewart's attorney, the prosecutor realized that the Soma prescription

might be at the Shopko pharmacy and he dispatched an officer to retrieve it. Upon closer inspection by the officer and the Shopko pharmacist, it was discovered that the Soma prescription had also been changed from 30 tablets to 80 tablets.

¶15 During direct examination of Stewart's doctor, the prosecutor asked specific questions about the drug Soma. The doctor testified that Soma had recently been used as a drug of abuse in the area and that he had read that on the East Coast, 18 teenagers had taken the drug and wound up in the hospital.

¶16 Stewart, testifying on his own behalf, explained that he went home for a few minutes after obtaining the prescriptions from his doctor. He stated that he set the prescriptions down while he was in the bathroom and that one of the other people in the house at the time must have altered the prescriptions. He testified that because he was in a hurry, he only took the prescriptions for the two painkillers to the pharmacy. He further testified that he did not realize the Percocet prescription had been altered until the pharmacist showed it to him.

¶17 On cross-examination, the prosecutor placed the altered Soma prescription in front of Stewart and asked him to identify it. Stewart's attorney objected on the basis that she had never seen the prescription before and was never notified of its existence. The District Court overruled her objection. The prosecutor then proceeded to question Stewart about the Soma prescription and moved for its admission into evidence, which the court granted. On re-direct, Stewart denied altering the Soma prescription.

¶18 During closing arguments, the prosecutor argued that the evidence that the Soma prescription had also been altered destroyed Stewart's defense. He told the jury:

> It was a good story by the defense until that prescription came in. That slid him right into the category of being guilty in your mind. That evidence showed beyond a reasonable doubt that he's guilty.

In his rebuttal closing argument, the prosecutor said:

> [D]id you see [Stewart's] reaction when I laid down the State's Exhibit 3 in front of him, the second altered prescription? Did you see that? . . .
>
> When this was produced, the gig was up, and he knew it, and he reacted to it. And

you saw him do it.

¶19 Stewart contends on appeal that the State violated its affirmative duty under Montana's criminal discovery statutes to disclose evidence that belonged to the defendant. Stewart also contends that after the court admitted the Soma prescription, the State changed its trial theory to convince the jury that the altered Soma prescription proved that Stewart altered the Percocet prescription.

¶20 The State has several affirmative duties to disclose evidence to a defendant. First, the State has a constitutional responsibility to disclose evidence favorable to a defendant. *See Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

¶21 Second, Montana has adopted a statutory scheme that places affirmative duties on both the State and a defendant. To that end, § 46-15-322(1)(d), MCA, provides:

> **Disclosure by prosecution**. (1) Upon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control:
>
> . . .
>
> (d) all papers documents, photographs, or tangible objects that the prosecutor may use at trial or that were obtained from or purportedly belong to the defendant; . . .

¶22 The policy behind § 46-15-322, MCA, is to provide notice and prevent surprise. *See State v. McKeon* (1997), 282 Mont. 397, 403, 938 P.2d 643, 647 (citations omitted). Furthermore, there is a continuing statutory duty to provide information to prevent surprise at trial:

> **Continuing duty to disclose.** If at any time after a disclosure has been made any party discovers additional information or material that would be subject to disclosure had it been known at the time of disclosure, the party shall promptly notify all other parties of the existence of the additional information or material and make an appropriate disclosure.

Section 46-15-327, MCA.

¶23 Unlike *Brady*, Montana's statutory requirements do not hinge on whether the evidence is exculpatory or inculpatory. The plain language of § 46-15-327, MCA, simply mandates that the State disclose all additional information or material within the State's possession. *State v. Licht* (1994), 266 Mont. 123, 128-29, 879 P.2d 670, 673-74 (clarifying *State v. Shaver* (1988), 233 Mont. 438, 760 P.2d 1230). Moreover, Montana's discovery statutes provide specific sanctions for violation of the criminal discovery rules including holding counsel in contempt for an intentional violation or declaring a mistrial. *See* § 46-15-329, MCA.

¶24 In the case *sub judice*, the prosecutor discovered the Soma prescription over the lunch break, yet he failed to disclose it to Stewart until Stewart testified later that day. Stewart argues that if the Soma prescription had been revealed when it was discovered, Stewart would have had ample time to reconsider his decision to testify or exercise his right to remain silent.

¶25 Furthermore, after the introduction of the altered Soma prescription, the entire tenor of the case changed. During closing argument, the prosecutor mentioned the Soma prescription twelve times even though Stewart had not been charged with any crime regarding the Soma prescription. The prejudicial impact of the drastic shift to the focus on the Soma prescription cannot be underestimated.

> Under the theory advanced by the government, the prosecution, by design or inadvertence, could withhold discoverable inculpatory evidence until the defendant asserted a defense strategy based on the apparent nonexistence of that evidence, thus foreclosing other, possibly viable, defense strategies. Unless a court concluded, based on all the evidence introduced, that the case against the defendant was "not strong," the discovery violation would be considered harmless. We refuse to adopt such a rule, for it would encourage precisely the "trial by ambush" that the Federal Rules of Criminal Procedure were designed to prevent.

*United States v. Noe (11th Cir. 1987), 821 F.2d 604, 608 (citing United States v. Martinez (11th Cir. 1985), 763 F.2d 1297, 1315).*

¶26 The State should have disclosed the Soma prescription to the defense as part of its continuing duty of disclosure. Moreover, in its response brief on appeal, the State

concedes that the prosecutor's failure to promptly notify Stewart about its possession of the Soma prescription was a violation of the statutory discovery duties.

¶27 Accordingly, we hold that the District Court erred in admitting the Soma prescription and we reverse and remand for a new trial.

## Issue 2.

¶28 *Whether the prosecutor's mention of Stewart's pretrial silence was improper.*

¶29 On cross examination, the prosecutor asked Stewart if he had contacted the county attorney's office, the sheriff's office, or the police department when he was served with the criminal charge. Stewart said that he had contacted his attorney. In his closing argument, the prosecutor emphasized that Stewart did not contact law enforcement officers after he was charged to explain that someone else had altered the prescriptions.

¶30 Stewart did not object to these comments at trial. He does so for the first time on appeal, however, we do not address issues or theories raised for the first time on appeal. *State v. Osterloth*, 2000 MT 129, ¶ 20, 299 Mont. 517, ¶ 20, 1 P.3d 946, ¶ 20 (citing *State v. Schaff*, 1998 MT 104, ¶ 26, 288 Mont. 421, ¶ 26, 958 P.2d 682, ¶ 26). Therefore, we decline to address this argument further.

## Issue 3.

¶31 *Whether matters not objected to at trial should be reviewed under the plain error doctrine.*

¶32 Stewart's trial counsel failed to object to several statements made by the prosecutor during *voir dire* and during closing arguments. On appeal, Stewart's appellate counsel argues that these errors are amenable to plain error review.

¶33 Section 46-20-701, MCA, provides in pertinent part:

> (2) Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that:

(a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of; or

(c) material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence.

Plain error review allows this Court to discretionarily review claimed errors that implicate fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA criteria, when failing to review the claimed error "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215.

¶34 Since we are already reversing and remanding this case for a new trial on the basis of the State's failure to disclose the Soma prescription, we decline to address the remainder of Stewart's alleged errors under plain error review. However, we will address them simply as guidance for the court in a further trial of this matter.

¶35 During *voir dire*, the prosecutor told the jury a story of a rape case he prosecuted in Great Falls some years before where, although he presented solid proof of guilt, the jury found the defendant not guilty. The prosecutor went on to explain that, after the trial, one of the jurors told him that the reason they acquitted the defendant was because the prosecutor had not proven that the victim was a virgin, a factor completely unrelated to the elements the State was required to prove at trial. The prosecutor asked the current jury panel to follow the judge's instructions in this case, and unlike the jury in the rape case, only hold the State to its burden on the elements of the charged offense. The prosecutor ended his closing argument by referring once again to his story of the rape case he tried several years earlier:

Remember this morning talking about the rape case tried up in Great Falls where

they came back and said we didn't prove she was a virgin? Sometimes jurors come in and say, well, we knew he was guilty, but the State didn't prove it. You kind of have to take a step back when they say that, because when they come in here--when you came in here, you didn't know anything about this case. If you're saying while walking out of here, well, we knew the State--we knew the Defendant did it, but the State didn't prove it, that can't be, because if you know the Defendant did it, the State proved it.

The prosecutor also told the jury to reject Stewart's defense and find that the State had satisfied the reasonable doubt requirement because, after all, reasonable doubt is a burden that the State satisfies every day:

> That's why we need a new jail in Missoula County. That's why we need a new prison, because every day jurors just like you find that the State has met its burden of proof.

¶36 Not only are the prosecutor's comments regarding the rape case and the need for a new jail in Missoula County irrelevant, they are a misrepresentation of the State's burden of proof. Stewart points out in his brief on appeal that the Missouri Supreme Court chastised the same prosecutor in a series of three cases for making the same improper argument about the state's burden of proof. In *State v. Burnfin* (Mo. 1980), 606 S.W.2d 629, 631, the prosecutor made the following comments:

> If you think he did it and if that thought is reasonable, we have proved him guilty, because you said when you took this witness box, we have no prejudice, we have no pre-convictions . . . . And if you have the thought, after hearing this evidence, that he's guilty and that thought is reasonable, we have proved him guilty, haven't we? What else would cause you to think that way but the evidence.

The court held in *Burnfin* that the comment was erroneous, but did not reverse the conviction.

¶37 The following year, the same prosecutor made this argument:

> You started from zero, not believing anything. And if you now believe he did it, the only thing that has happened from the time you took that oath to this minute is the State's case and evidence. You're not permitted to say, "I don't believe they proved

it," because if you believe he did it and that belief is reasonable, he is guilty beyond a reasonable doubt.

*State v. Jones (Mo. 1981), 615 S.W.2d 416, 418. The Missouri Supreme Court reversed the defendant's conviction in that case.*

¶38 In 1982, the same prosecutor made the same argument for a third time in the rebuttal portion of his closing argument:

> You came in here and you swore on Monday-you didn't know anything about this case and you swore you would be guided only by the evidence. You took that oath. So don't let it be said, "Oh we think he did it but they didn't prove it." If you think he did it and that thought is reasonable, beyond a reasonable doubt, then we have proved it.

*State v. Shelby (Mo. 1982), 634 S.W.2d 481, 483. The Missouri Supreme Court not only reversed the defendant's conviction in Shelby, but it criticized the prosecutor and concluded that arguments attempting to define reasonable doubt will cause reversible error.*

¶39 The prosecutor's comments in the case before us on appeal are nearly identical to the remarks made by the prosecutor in *Burnfin*, *Jones* and *Shelby*. Hence, we agree with the Missouri Supreme Court that arguments attempting to define reasonable doubt will cause reversible error.

¶40 In *State v. Raugust*, 2000 MT 146, ___ Mont. ___, 3 P.3d 115, the defendant failed to object when the prosecutor made statements during closing argument that the prisons were full of persons convicted beyond a reasonable doubt and that the defendant was "guilty as sin." Unlike the facts here, we determined in *Raugust* that the alleged errors were either misstatements of fact, taken out of context of the prosecutor's argument, constituted the State's analysis of the evidence, or were later cured by the jury instructions. Hence, we concluded that none of the alleged errors in *Raugust* presented the requisite exceptional case to invoke the common law plain error doctrine. *Raugust*, ¶ 37. While we do not address the allegations of error in the case before us on appeal under plain error review, we note that although counsel may comment on the burden of proof as it relates to facts presented in trial, it may not go outside the record or misrepresent the law as instructed by the judge. *United States v. Roberts* (1st Cir. 1997), 119 F.3d 1006, 1016.

¶41 The prosecutor also told the jury that the denials that Stewart made were so common place that prosecutors have named it the "some-dude" defense: "Blame it on somebody, some dude, some dude sitting out there." The State concedes that this comment was improper because it refers to matters outside the record and to the prosecutor's own experience. Moreover, this comment was improper because, similar to a prosecutor commenting on the believability of a witness, "the jury may simply adopt the prosecutor's views instead of exercising their own independent judgment as to the conclusions to be drawn from the testimony." *State v. Stringer* (1995), 271 Mont. 367, 380-81, 897 P.2d 1063, 1071.

¶42 The "some-dude" remarks were essentially the prosecutor's personal opinion on the strength of the case against Stewart. It is well settled Montana law that closing arguments that reflect the prosecutor's personal opinions as to guilt are improper. *State v. Gladue*, 1999 MT 1, ¶ 21, 293 Mont. 1, ¶ 21, 972 P.2d 827, ¶ 21 (citations omitted).

¶43 The prosecutor also assured the jury that even if they found Stewart guilty, the judge has the authority to "get [him] into some kind of treatment . . . get him on the right path" and not sentence him to any jail time. The prosecutor's comments were meant to reassure the jury that a guilty verdict would not hurt Stewart, but would actually benefit him in the long run.

¶44 The State concedes that the prosecutor should not have made this statement to the jury because sentencing is solely the duty of the trial court. In a non-capital case, the jury's verdict should not be influenced in any way by sentencing considerations. *State v. Brodniak* (1986), 221 Mont. 212, 226, 718 P.2d 322, 332 (citations omitted). Hence, it is impermissible for a jury to give weight to the possible punishment when reaching a verdict. *Brodniak*, 221 Mont. at 227, 718 P.2d at 332.

¶45 On retrial, we admonish the prosecution not to refer to the rape story, the need for a new jail in Missoula County, the "some-dude" defense, or to matters involving sentencing in either *voir dire*, the prosecution's opening statement or closing argument.

¶46 Reversed and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, concurring in part and dissenting in part.

¶47 I join the Court's opinion on issue 1, which reverses and remands for a new trial. I dissent from the remainder of the opinion since it is clearly unnecessary to address issues 2 through 4.

¶48 As the Court correctly states, issue 1 is dispositive. In other words, with our resolution of issue 1, our role in this appeal is effectively over because we are remanding for a new trial. Having disposed of the case, it is my view that the Court's opinion should end. Instead, the Court goes on to address three issues--the entire discussion is, of course, *dicta* which constitutes an advisory opinion. The Court admits as much when it states it addresses these issues to give "guidance" for the new trial. I cannot agree with this approach.

¶49 The fact is that a new trial seldom unfolds in exactly the same manner as the original trial. Statements made, failures to object and the like which occurred at the first trial with regard to both the prosecution's and defense counsel's performance may not occur again. This is why we commonly end an opinion with the dispositive issue, particularly when a remand for retrial is the result. To go on and address issues which may not arise in the new trial is not only advisory, it is wasteful of this Court's resources. Moreover, insofar as "guidance" is concerned, I daresay neither counsel needs such direction with regard to the matters the Court addresses in issues 2 through 4. The mere raising of these issues on appeal is surely sufficient to put counsel on notice to avoid a repeat of such problematic acts or omissions. Finally, it is clear that no "guidance" about these extraneous issues is needed by the District Court, since the court was never asked to rule on them during the first trial and is quite capable of determining them in the first instance during the retrial, if the issues arise.

¶50 The Court having properly disposed of this appeal in issue 1, with which I agree entirely, the case should end. I dissent from the Court's decision to render an advisory opinion on the remaining issues raised.

/S/ KARLA M. GRAY