No. 14623

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

THE STATE OF MONTANA on the relation of
LYNN MILLER, Individually and as Chair-
man of the Tax Relief Association,

Plaintiffs and Relators,

-vs-

FRANK MURRAY, Montana Secretary of State,
and the County Clerk and Recorders, et al.,

Respondents and Defendants.

---

Appeal from:  District Court of the First Judicial District,
              Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

    For Relators:

        Petaja, Jacques & Smoyer, Helena, Montana
        Charles Petaja argued, Helena, Montana
        Leo Gallagher argued, Helena, Montana

    For Respondents:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Mike McGrath argued, Assistant Attorney General,
         Helena, Montana
        Richard P. Heinz, County Attorney, argued, Polson,
         Montana
        Patrick Flaherty, County Attorney, Boulder, Montana
        Mark Murphy, Deputy County Attorney, argued, Boulder,
         Montana
        Charles Graveley, County Attorney, Helena, Montana
        Denzil R. Young, County Attorney, Baker, Montana
        John Flynn, County Attorney, Townsend, Montana

---

                          Submitted:  September 20, 1979

                           Decided:  OCT  2 1979

Filed:  OCT  2 1979

_Thomas J. Kearney_
                          Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Lynn Miller appeals from an order of the Lewis and Clark County District Court, denying a request for a declaratory judgment interpreting section 13-27-103, MCA, and instructing the respondents to certify and accept certain signatures which appear on petitions supporting relators' proposed initiative. Miller also appeals from the same order granting respondents' motion to quash relators' alternative request for a writ of mandate compelling the respondents to certify and accept the signatures so that the initiative could be placed on the ballot at the next general election.

Relators, Lynn Miller is chairman of the Tax Relief Association, a group organized for the purpose of placing a constitutional initiative expanding the state gambling laws on the 1978 general election ballot.

Petitions for the purpose of collecting the necessary 31,672 signatures were duly approved by the Secretary of State as to form and style prior to June 30, 1978, and thereafter circulated among the electorate by members and supporters of the Association. The signed petitions were then turned into the respective County Clerk and Recorders who reviewed the submitted signatures and certified to the Secretary of State the signatures which they believed were qualified electors of the State by July 14, 1978. Shortly thereafter, the Secretary of State determined the petition drive had fallen short by 2,904 signatures.

On August 15, 1978, the Association filed suit alleging approximately 3,500 signatures were wrongfully disqualified. Specifically, relators requested a declaratory judgment

-2-

declaring:

>    (1)   that the signatures on an initiative
>    petition need not be identical to satisfy the
>    statutory requirement of section 37-116, R.C.M.
>    1947, that requires the petition be signed in
>    substantially the same manner as on the voter
>    registry card;
>
>    (2)   that the address given by a petition signer
>    need not be identical to that found on the voter
>    registry card, so long as the address is still
>    within the county and legislative district in
>    which the petition is submitted for certification;
>    and
>
>    (3)   that certain signatures rejected by the Clerks
>    and Recorders be declared valid, and direct the
>    Montana Secretary of State to accept them and to
>    certify the initiative as a ballot issue for the
>    next general election.

In the alternative, appellants sought a writ of mandate directing:

>    (1)   the County Clerk and Recorders to recount
>    the signatures on the petitions filed in the
>    respective counties and to certify those
>    signatures which are substantially similar to
>    the signatures on the voter registry cards or
>    to show cause why;
>
>    (2)   to certify those signatures which were
>    accompanied by an address not identical to that
>    on the voter registry cards but which are still
>    within the county and legislative district in
>    which the petition was submitted for certification
>    or to show cause why;
>
>    (3)   the Montana Secretary of State to accept the
>    recertified petitions and to certify the initiative
>    as a ballot issue in the next general election if the
>    required number of signatures have been secured or
>    to show cause why.

An alternative writ of mandate was issued by the District Court. A show cause hearing was held on August 29, 1978, at which time arguments were heard and motions were made to dismiss the complaint and quash the writ of mandate. The District Court by an order entered September 5, 1978, denied the declaratory relief and writ of mandate and granted respondents' motion to quash. The Court based its denial of declaratory relief on the reasons that the controversy would become moot before a factual determination could be

made and that it is the function of the legislature and not the judiciary to resolve the question of petition signature qualifications. The denial of mandate relief was for the reason that in carrying out their duties, the County Clerks must exercise their discretion to determine whether a petition is signed in substantially the same manner as the voter registry card and mandate will not issue to control discretion. We affirm.

Relators present three issues for our review:

(1) Did the District Court err in refusing to issue a declaratory judgment?

(2) Did the District Court err in refusing to issue the writ of mandate as asked?

(3) Is it necessary for the Supreme Court to enter a declaratory judgment?

We find that the first issue in this case is controlled by the last issue which will be addressed first and the mandate issue discussed last. This Court will not pass upon moot questions. State v. Thompson (1978), ____ Mont. ____, 576 P.2d 1105, 35 St.Rep. 343; Bell v. State Highway Commission (1954), 128 Mont 122, 271 P.2d 425; Adkins v. City of Livingston (1948), 121 Mont. 528, 194 P.2d 238. A question which is moot is not a proper subject for a declaratory judgment. See Chovanak v. Mathews (1948), 120 Mont. 520, 188 P.2d 582. A moot question is one which existed once but because of an event or happening, it has ceased to exist and no longer presents an actual controversy. In the present case, the Forty-Sixth Montana Legislature has significantly modified the statute on which relators depend. See Chapter 494, Laws of 1979. As a result, it would be superfluous for this Court to issue a declaratory judgment as requested by relators. The controversy cannot be repeated because the law has been decisively changed.

-4-

Not only has the specific statute in controversy been changed, but so have the initiative procedures that will be used for the ballot in 1980. Under the new law, the procedures to be used to petition for an initiative to be on an election ballot differ greatly from the process used for the 1978 elections. See Chapter 400, Laws of 1979. Even though a sufficient number of valid signatures may in fact exist, there was not sufficient time available to qualify the matter for the 1978 ballot and we find no means of legal or equitable relief is now available.

For these reasons, this Court finds no basis to issue the declaratory relief sought by the relators.

A writ of mandate may be issued "to compel the performance of an act which the law specially enjoins as a duty resulting from an office . . ." (Emphasis added.) Section 27-26-102(1), MCA. "Mandamus is an extraordinary remedy which lies to compel only a 'clear legal duty.'" State ex rel., State Tax, Etc. v. Montana Bd. (1979), ___ Mont._____, 593 P.2d 747, 749, 36 St.Rep. 849, 851. The difficulty here is that there was not a legal duty on the part of the Secretary of State under section 13-27-304, MCA, to accept any signatures which were not forwarded by the County Clerk and Recorders and verified as registered electors. Likewise, the Clerk and Recorders do not have a duty to accept and certify signatures submitted to them as a matter of course. The Clerk and Recorders are only required to certify to the Secretary of State the number of signatures they find to be valid.

In order to decide if a signature may be counted, the Clerk and Recorder must determine if the signatures on the petition are "signed in substantially the same manner" as the signatures on the voter registry cards. Section 13-27-103, MCA. To satisfy this statutory requirement, the individual

-5-

Clerk and Recorders must exercise discretion. Mandate does not lie to control discretion, absent an abuse thereof. Burgess v. Softich (1975), 167 Mont. 70, 535 P.2d 178.

Addresses aid the Clerk and Recorders in the certification process. The only purpose of the address is to aid in the identification of the signer so that the Clerk can then locate the signer's voter registration for the purpose of certification. State v. Board of Examiners (1952), 125 Mont. 419, 239 P.2d 283. However, if it is the belief of the individual Clerk and Recorder that the signature differs from that on the voter registry card, then the signature is not valid for this means of signature certification. This function of the Clerk and Recorder is discretionary, and we hold that the District Court did not err in refusing to issue a writ of mandate as requested by the relators.

The order of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-6-