NO.   93-278

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

    Plaintiff and Respondent,

    -v-

RAY LICHT,

    Defendant and Appellant.

APPEAL FROM:   District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       William Hooks, Appellate Defender, Helena, Montana

       For Respondent:

       Hon. Joseph P. Mazurek, Attorney General, George
Schunk, Assistant Attorney General; David Rice, Hill
County Attorney

FILED

AUG 1 1 1994

Filed::

*El Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:   June 24, 1994

Decided: August 11, 1994

Justice James C. Nelson delivered the Opinion of the Court.

The Defendant, Ray Licht, was charged by amended information with two counts of criminal sale of dangerous drugs, both felonies, in violation of § 45-y-101, MCA. After a jury trial held in the Twelfth Judicial District Court, Hill County, Licht was found guilty of both charges on December 4, 1992. Licht appeals from those convictions. We reverse in part and remand for further proceedings consistent with this opinion, and we affirm in part.

Licht raises two issues on appeal:

1. Did the District Court err in refusing to grant a mistrial or a new trial, when it was discovered during trial that the State had failed to reveal a prior electronically monitored meeting in which the informer approached Licht?

2. Did the District Court err in denying Licht's motion to dismiss Count II because the State failed to prove with sufficient evidence that Licht sold, bartered, exchanged, or gave away marijuana to Ernest LaMere?

On May 4, 1992, members of the Tri-Agency Drug Task Force (Task Force) arranged to have a confidential informant, Alex Doney, attempt to purchase drugs from Licht in a controlled buy. The members of the Task Force participating in the purchase attempt were Monte Reichelt, the Chief Deputy of the Hill County Sheriff's Office, and James Brewer, a Deputy Sheriff of the Blaine County Sheriff's office. The officers fitted Doney with an electronic transmitter, commonly known as a body wire, so that they could keep track of Doney and monitor any conversation between Doney and Licht. The officers also gave Doney marked money with the purpose of retrieving it from Licht after the transaction.

2

The Task Force officers drove Doney to the motel where Licht was staying and dropped him off. Doney approached Licht, who was working on his vehicle, and asked if he had any marijuana for sale. Licht responded that he had some and that it was "twenty dollars a piece." Licht and Doney then got into Licht's vehicle and drove to a discount store's parking lot where Doney gave Licht $40.00 of the marked money and received two grams of marijuana in return. After the transaction took place, Doney got out of the car, and Licht drove away. The Task Force officers immediately picked up Doney who turned over the two gram bags of marijuana to Deputy Reichelt.

After dropping Doney off at a motel, the Task Force officers contacted Jerry Smith, a probation and parole officer, and Steve Marden, a deputy with the Hill County Sheriff's office, to assist them in arresting Licht and in searching his residence, person and vehicle. Licht, however, was not home.

The officers drove around Havre searching for Licht, and spotted his vehicle parked near the Corner Bar. The officers observed Licht get out of his vehicle and enter the tavern. Approximately one minute later Licht and another man, Ernest LaMere, exited the tavern and walked to the back of the building. Deputy Marden and Smith then witnessed an exchange take place between LaMere and Licht. Although neither Marden nor Smith observed what the two men exchanged, Deputy Marden testified at trial that he saw LaMere put the object he received from Licht into his right front pants' pocket. Marden also testified that the two men were acting suspiciously and were looking around as if scanning

the area.

Shortly after the transaction, Licht drove away, leaving LaMere at the Corner Bar. Officer Brewer testified that after LaMere left Licht's vehicle, he (LeMere) got into a brown colored Wagoneer that another individual was driving and left the Corner Bar. All four officers followed Licht to a convenience store where he was arrested. Licht had in his possession one of the marked twenty dollar bills the Task Force officers had given to Doney to purchase the drugs.

Officers Marden and Reichelt returned to the Corner Bar and observed LaMere standing by the driver's door of a parked Wagoneer, talking to the driver. The officers approached LaMere and noticed a bulge in his right front pants' pocket. After a pat-down search, the officers determined LaMere had a plastic baggy in his right front pants' pocket and asked him to remove it. LaMere refused the officers' requests to remove the object, therefore, the officers placed him under arrest and removed a plastic bag containing marijuana from LaMere's right front pants' pocket.

Licht was charged with two counts of criminal sale of dangerous drugs, both felonies. An omnibus hearing was held, and an Omnibus Hearing Order was entered granting Licht "complete discovery." A jury trial was held December 3 and 4, 1992. At trial, the State called LaMere as a witness. LaMere testified that he aid not buy the marijuana from Licht, but had found it in the mens' room of the Corner Bar. LaMere also testified that on the day he was arrested, he was intoxicated and taking pain medication

4

for a recent stab wound, and therefore had trouble remembering the events clearly. Deputies **Reichelt** and **Marden** testified that **LaMere** did not appear to be intoxicated when they arrested him. Licht never admitted selling marijuana to **LaMere** or Doney.

During trial, the State asked deputy Reichelt how he recognized **Licht's** voice over the body wire. Reichelt testified that he recognized **Licht's** voice because approximately two weeks to one month earlier, the Task Force had Doney attempt to purchase drugs from Licht. Doney wore a body wire during this earlier attempt, and Reichelt testified he heard Licht over the body wire at that time.

Reichelt testified that he could not remember whether records had been kept of this earlier meeting or, if any had **been** prepared, whether they had been turned over to the State. The testimony at trial was the first **time** defense counsel had notice that law enforcement had previously attempted to purchase drugs from Licht.

As a result of the testimony concerning the earlier contact, defense counsel aoved for a mistrial and asked for a new trial following the State's case-in-chief. Defense counsel argued that the prosecution withheld evidence which would have allowed the defense to present an entrapment defense. The court denied the motion for a mistrial, but apparently was concerned over the lack of documentation and the fact that, if any documentation did exist, the State should have turned it over to defense counsel. The court therefore ordered the Task Force to search their files for any documentation relating to the earlier contact, and to return any

5

such documentation to the court within the hour.  The court reserved any further rulings on the matter.

Defense counsel then moved for a directed verdict of acquittal on Count II, for lack of sufficient evidence.  The court denied this motion and allowed the jury to deliberate on both counts. The jury found Licht guilty of both charges on December 4, 1992. Licht was sentenced to four years imprisonment on both counts on December 9, 1992.

On December 16, 1992, Licht filed a post-trial motion for a new trial alleging that new evidence establishing entrapment was presented at trial.  The court held a hearing on the motion on March 15, 1993.  Although the defense did not argue the "new evidence" issue at this hearing, the State at this time revealed that the Task Force had previously used Doney in an attempt to purchase drugs from Licht on April 23, 1992.

The State also admitted that the Task Force had a written report of the April 23rd meeting, which allegedly was inadvertently not turned over to defense counsel prior to trial.  The State alleged the written report had been turned over to defense counsel at "the end of the day," pursuant to the court's order directing the Task Force to search their files.  The "end of the day" apparently references some time during the last day of the trial. The report itself was never offered into evidence, and no testimony was offered to support or refute the motion for new trial. Therefore,  the court denied the motion without hearing any testimony  concerning the report,  or having  it admitted into

6

evidence, and entered a written order to that effect on March 22, 1993. Licht subsequently appealed his convictions to this Court on April 20, 1993.

## I.   FAILURE TO DISCLOSE

The first issue Licht raises on appeal is whether the District Court erred when it denied his motion for a mistrial, or in the alternative, whether the District Court erred when it denied his motion for a new trial. The grounds for both motions are the same, and raise the issue of whether Licht was prejudiced by the State's failure to disclose, pre-trial, evidence of the prior electronic surveillance.

Section 46-15-322, MCA (1991), sets forth the State's statutory obligation of disclosure in a criminal case. Subsections (1) and (2) of that statute provide:

(1) Upon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control:
(a) the names, addresses, and statements of all persons whom the prosecutor may call as witnesses in the case-in-chief;
(b) all written or oral statements of the defendant and of any person who will be tried with the defendant:
(c) all written reports or statements of experts who have personally examined the defendant or any evidence in the particular case, together with the results of physical examinations, scientific tests, experiments, or comparisons;
(d) all papers, documents, photographs, or tangible objects that the prosecutor may use at trial or that were obtained from or purportedly belong to the defendant: and
(e) all material or information that tends to mitigate or negate the defendant's guilt as to the offense charged or that would tend to reduce the defendant's potential sentence.
(2) At the same time, the prosecutor shall inform the defendant of, and make available to the defendant for examination and reproduction, any written or recorded

7

**material** or information within the prosecutor's control regarding:

    **(a)** whether there has been **any** electronic surveillance of any conversations to which the defendant was a party;

    (b) whether an investigative subpoena has been executed in connection with the case; and

    (c) whether the case has involved an informant and, if so, the informant's identity if the defendant is entitled to know either or both of these facts under Rule 502 of the Montana Rules of Evidence.

In interpreting § 46-15-322 and § 46-15-327, MCA, (the latter statute requiring continuing disclosure), this Court has stated that while the prosecution is under an initial and continuing obligation to disclose all pertinent information it may gather, "... the statutes have no effect until the State actually develops the knowledge of a specific act, fact, or information that exculpates the defendant." State v. Shaver (1988), 233 Mont. 438, 447, 760 P.2d 1230, 1235.

The State admits that it failed to turn over the evidence of the prior contact to the defense prior to trial and acknowledges that this failure to disclose appears to be a violation of § 46-15-322(2) (a), MCA. The State argues, however, that the police may have been confused as to whether they had to turn over reports of all electronic surveillance regardless of whether the evidence was inculpatory or exculpatory. The State maintains that our holding in <u>Shaver</u> indicates the State has no duty to disclose the types of information set forth in § 46-15-322, MCA, until the State actually develops exculpatory information. The State maintains that this aspect of the prosecution's statutory disclosure obligation needs clarification. We agree that clarification is necessary.

8

The statute at issue is clear in its requirements. While §
46-15-322(1)(e), MCA, imposes a mandatory duty on the prosecution
to disclose all material and information that might be generically
referred to as "exculpatory," subsections (1)(a) through (d) and
(2)(a) through (c), of that statute contain no such limiting
language. We hold that, under the plain language of subsections
(1)(a) through (d) and (2)(a) through (c), the prosecution is
obligated to disclose <u>all</u> material and information listed <u>whether
inculpatory or exculpatory</u>. As to subsections (1)(a) through (d)
and (2)(a) through (c), § 46-15-322, MCA, contemplates full
disclosure of all of the material and information listed within the
prosecutor's possession and control. It is not up to the State or
its agents to determine whether any such material or information is
inculpatory or exculpatory; the legislature has left that decision
to the defendant. We therefore clarify <u>Shaver</u> and all other
decisions of this Court to the extent that any such cases indicate
a contrary rule.

In the instant case, the District Court denied Licht's motion
for a mistrial or new trial made at the end of the State's case-in-
chief without any evidence or information concerning the existence
or contents of the report. Following the verdict, the court again
denied the motion for a new trial. The court did so after only
hearing the representations made by the prosecution concerning the
contents of the report, as the defense did not pursue the failure
to disclose as a ground for a new trial at the March 15, 1993
hearing.

9

At this point in time we still do not know what is actually in the report; it was not offered into evidence and no testimony was presented concerning its contents. Moreover, we do not know why the prosecution failed to disclose the report and prior contact -- whether such failure was negligent, intentional or by reason of some misunderstanding of the disclosure requirements of the law. Finally, Licht has failed to demonstrate how, if at all, his defense was prejudiced by the prosecution's failure to disclose the report and prior contact, except to argue that he might have been able to use the report for an entrapment defense.

The law in Montana regarding the effect of the suppression of or failure to disclose evidence by the prosecution is set forth in State v. Craig (1976), 169 Mont. 150, 153, 545 P.2d 649, 651, and is reiterated in State v. Patterson (1983), 203 Mont. 509, 512-13, 662 P.2d 291, 293. Suffice it to say that, notwithstanding the statutory obligation of the State to disclose as set forth above, not every suppression of evidence or failure to disclose will necessarily mandate a new trial. While there may or may not have been a violation of the defendant's due process rights by reason of the State's failure to disclose the prior contact of Licht by the Task Force, we cannot decide that issue nor will we presume prejudice on the basis of the record before us.

At this juncture, we hold simply that the District Court erred in denying the defendant's motions for mistrial and new trial without having the actual report before it in evidence, without reviewing the report, without testimony as to why the report was

10

not disclosed at the outset, and without finding, on the basis of that evidence and record, that no due process right or defense of the defendant was prejudiced by the State's failure to disclose the report and the prior contact by the Task Force.

Accordingly, we reverse the District Court's denial of Licht's motions for new trial and remand this case for a new hearing, consistent with this opinion, on those motions.

## II. SUFFICIENCY OF EVIDENCE

The second issue Licht raises on appeal concerns whether the District Court erred in denying his motion to dismiss Count II because, according to Licht, the State failed to prove with sufficient evidence that he sold, bartered, exchanged, or gave away marijuana to LaMere. Licht correctly states in his brief that the State has the burden of proving each element of a crime beyond a reasonable doubt. State v. Starr (1983), 204 Mont. 210, 214, 664 P.2d 893, 895. Licht contends that the facts presented at trial do not establish the offense of criminal sale of dangerous drugs beyond a reasonable doubt.

In support of his argument Licht notes the following: (1) none of the officers actually witnessed Licht give LaMere marijuana, or LaMere give Licht money: (2) LaMere testified that he found the marijuana on the floor of the men's room in the Corner Bar, and did not pay anyone for it; (3) Licht did not admit selling marijuana to LaMere; and (4) LaMere had plenty of opportunity to get the marijuana from any number of sources prior to and after the officers saw Licht and LaMere talking outside the Corner Bar.

11

Licht also notes that none of the officers were watching LaMere after the exchange, as they all left to find Licht. In addition, Officer Brewer testified that he saw LaMere leave the Corner Bar in a brown Wagoneer which was driven by another individual.

When the issue on appeal is whether there was sufficient evidence to support a jury verdict, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Lyons (1992), 254 Mont. 360, 363, 838 P.2d 397, 399.

Section 45-9-101(1), MCA (1991), in pertinent part, defines the offense of criminal sale of dangerous drugs as follows:

> A person commits the offense of criminal sale of dangerous drugs if he sells, barters, exchanges, gives away, or offers to sell, barter, exchange, or give away ... any dangerous drug, as defined in 50-32-101.

Accordingly, the prosecution had to prove that LaMere received the marijuana the officers found in his possession from Licht. At trial the following evidence was presented to prove that Licht committed the criminal sales charge set forth in Count II. Several officers observed Licht enter the Corner Bar and then exit the tavern with LaMere approximately one minute later. Deputy Marden and Smith witnessed an exchange take place between LaMere and Licht. Although neither Marden nor Smith observed what the two men exchanged, Deputy Marden testified at trial that he saw LaMere put the object he received from Licht into his right front pants' pocket, the same pocket where the officers found the marijuana. Marden also testified that the two men were acting suspiciously and

12

were looking around as if scanning the area.

It is well established that the resolution of factual matters is for the jury, and if the verdict is supported by substantial evidence this Court must affirm the decision. State v. Price **(1988),** 234 Mont. 144, 148, 762 **P.2d** 232, 235. (Citations omitted). The fact that the evidence presented was circumstantial does not preclude a finding that Licht sold drugs to **LaMere.** State v. Lynn **(1990),** 243 Mont. 430, 435, 795 **P.2d** 429, 433. We conclude that the evidence presented, along with the fact that Licht was arrested for selling marijuana to Doney on the same day as the transaction with **LaMere** took place, provides substantial evidence upon which a rational jury could have found Licht was guilty of all the essential elements of the offense of criminal sale of dangerous drugs.

REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; AFFIRMED IN PART.

_____
Justice

We Concur:

_____

_____

_____
Justices

13

August 11, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

William Hooks
Appellate Defender
Capitol Station, P. O. Box 200145
Helena, MT   59620-0145

HON. JOSEPH P. MAZUREK, Attorney General
        , Assistant
Justice Bldg.
Helena, MT  59601

DAVID G. RICE
Hill County Attorney
P.O. Box 912
Havre,  MT  59501

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy