

DA 06-0824

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 427

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

DALE HENRY DUNNING,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                 In and For the County of Yellowstone, Cause No. DC 05-1016
                 Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Jim Wheelis, Chief Appellate Defender; Joslyn M. Hunt, Assistant Appellate
              Defender, Helena, Montana

       For Appellee:

              Hon. Mike McGrath, Montana Attorney General; John Paulson, Assistant
              Attorney General, Helena, Montana

              Dennis Paxinos, Yellowstone County Attorney; Ann-Marie McKittrick,
              Deputy County Attorney, Billings, Montana

Submitted on Briefs:  July 23, 2008

Decided:  December 16, 2008

Filed:

_____
                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Dale Henry Dunning (Dunning) appeals from an order entered in the Thirteenth Judicial District Court, Yellowstone County, convicting him of one count of felony kidnapping and one count of misdemeanor sexual assault.  We affirm.

¶2    Dunning presents the following issues for review:

¶3    Whether the District Court abused its discretion by granting the State's motion in limine to limit inquiry into earlier statements by the alleged victim.

¶4    Whether the District Court abused its discretion by granting the State's motion to depose the alleged victim.

¶5    Whether the District Court abused its discretion by granting the State's motion to excise portions of the alleged victim's deposition.

¶6    Whether the District Court abused its discretion in sentencing Dunning.

## PROCEDURAL AND FACTUAL BACKGROUND

¶7    Dunning approached M.K. as she walked down Montana Avenue in Billings, Montana, on October 30, 2005, on her way to visit a friend, Michael Reim (Reim).  Dunning introduced himself and asked M.K. if she was a homeless youth.  M.K. told Dunning that she was homeless, but not a youth.  M.K. had turned 18 just ten days earlier.  Dunning smiled, reached out, and shook hands with M.K.

¶8    M.K. was 5'2" tall and weighed about 100 pounds at the time.  M.K. had never before met Dunning.  M.K. stopped shaking hands, but Dunning did not let go.  Dunning continued to hold M.K.'s hand and grabbed M.K.'s wrist with his other hand.  Dunning walked backwards and pulled M.K. toward his parked pickup truck.  Dunning opened the passenger

2

door of his pickup truck and told M.K. to get in. M.K. refused. Dunning climbed into the pickup truck and pulled M.K. inside. Dunning reached in front of M.K. to shut and lock the door.

¶9    Dunning pulled out of his parking spot and turned onto Montana Avenue. M.K. tried to unlock and open the door several times. Dunning repeatedly pushed the lock back down. Dunning drove to a deserted spot at the south end of Montana Avenue and parked behind a large dumpster.

¶10    Dunning told M.K. that she could trust him and that he would not hurt her. Dunning offered M.K. money and a motel room. Dunning grabbed M.K. in a bear hug and squeezed her tightly. Dunning kissed M.K. on the cheek and put his hand inside the back of M.K.'s pants. Dunning touched the crack of M.K.'s buttocks. Dunning squeezed harder as M.K. squirmed to get free. M.K. tried to persuade Dunning to stop. She first told him that she needed to find her boyfriend. M.K. then told Dunning that she was pregnant.

¶11    After several minutes, a small red sports car made a u-turn at the end of Montana Avenue and parked right behind Dunning's pickup truck. Dunning stopped hugging M.K., but continued to hold her arm. Dunning had not released his hold of M.K., except to shift gears, from the time that he first had shaken her hand. Dunning told M.K. that he had decided to take her back to where he had found her.

¶12    Dunning drove to the spot where he initially had pulled M.K. into his pickup truck and parked. Dunning sat and talked to M.K. for a few minutes with his pickup truck engine running. Dunning suddenly changed his mind and told M.K. that he had decided to take her

3

to Miles City. Dunning pulled back onto Montana Avenue and stopped for a red light at the 27th Street intersection. Dunning released his hold on M.K. and waited for traffic. M.K. unlocked the door, opened it, and jumped out.

¶13 M.K. landed on her feet, but soon lost her balance and hit her side on the ground. M.K. wrote Dunning's license plate number on her hand and quickly walked the opposite direction towards Reim's apartment. Reim drove M.K. to Mark Owen's (Owen) apartment to get M.K.'s boyfriend, Terrance McManis (McManis). McManis lived with Owen. M.K., Reim, and McManis returned to Montana Avenue to look for Dunning. Dunning could not be found. M.K. called the police. The police arrested Dunning a short time later. Dunning admitted to police that he had offered M.K. money and a motel room. Dunning denied that he had restrained M.K., or that he had touched her inappropriately.

¶14 The State charged Dunning with felony kidnapping and misdemeanor sexual assault. The court scheduled a jury trial for April 10, 2006. The State filed several motions in limine regarding the anticipated testimony of Owen and cross-examination of M.K. The State also filed a motion to depose M.K. and her boyfriend. The court held a hearing on the motions in limine and the motion for the court-ordered depositions.

¶15 The State sought to preclude Dunning from inquiring into M.K.'s sexual history, criminal history, alleged prior claims of rape, and other matters that the State argued should be excluded by the rape shield statute and rules of evidence. Dunning contested only the State's motion that sought to preclude testimony regarding M.K.'s alleged false claim of pregnancy. Owen stated in his witness interview that he believed M.K. to be a pathological

4

liar. Owen had recalled an incident when M.K. had told him that she was pregnant, or he had heard that she was pregnant, and at some undisclosed time he saw her pull a feminine hygiene product from her backpack. Dunning wanted the jury to hear testimony regarding what Owen described as M.K.'s false claim of being pregnant to help determine her credibility.

¶16 The State argued that Owen's prospective testimony was not proof that M.K. had lied about having been pregnant. The State pointed out that Owen did not know when he had seen M.K. with the feminine product in relation to her alleged claim of pregnancy, or that M.K. may have miscarried, or that M.K. mistakenly may have thought she had been pregnant. The State argued that this testimony should be excluded as the question of M.K.'s pregnancy had not been an issue in this case. The court determined that the rape shield statute prohibited this testimony and that it would not be relevant under M. R. Evid. 402. The court further determined that this testimony would be more prejudicial than probative under M. R. Evid. 403.

¶17 The court also granted the State's motion for the depositions of M.K. and McManis. The State sought to serve M.K. with a subpoena for trial and a subpoena for deposition. The State argued that it preferred M.K.'s live testimony, but it wanted to use her deposition testimony if M.K. failed to appear for trial. M.K. was homeless. The State had been unable to find M.K. at the places that she usually patronized or through her acquaintances. The State also had learned that M.K. and McManis may have left the area. M.K. initially had responded to the State's and Dunning's requests to meet, but she recently had missed a

scheduled interview. The State enlisted the assistance of the Sheriff's office, the Billings Police Department, and an additional detective in an unsuccessful attempt to find M.K. The court granted the motion for the depositions, but informed the parties that it would entertain arguments about whether M.K.'s deposition would be used in lieu of her testimony if M.K. failed to appear for trial. The State deposed M.K. on March 24, 2006.

¶18    The State moved to excise portions of M.K.'s videotaped deposition and Dunning moved to strike and excise other portions of M.K.'s videotaped deposition. The State objected to Dunning's questioning about why M.K. could not sleep at Owen's house or at the homeless shelter on the night of the incident. M.K. testified in her deposition that she could not stay at Owen's apartment because it was too small. Owen claimed that M.K. was dishonest and as a result, had not been welcome to stay at his apartment.

¶19    The State argued that whether M.K. had been welcome to stay at Owen's apartment was irrelevant and unfairly prejudicial. Dunning contended that it was relevant to show that M.K. had no options other than to seek shelter with an acquaintance she had just met, such as Dunning, and that it reflected upon M.K.'s untruthfulness. Dunning contended that the encounter with M.K. had been voluntary and that she had lied about having been kidnapped. The court permitted Dunning to ask Owen if M.K. could have slept at his apartment to allow Dunning to establish his theory that M.K. had asked to sleep in his pickup truck. Dunning could not ask Owen, however, the reason why M.K. had not been welcome to sleep at his apartment.

6

¶20    M.K. testified in person at trial.  A jury convicted Dunning of one count of felony kidnapping and one count of misdemeanor sexual assault.  The court sentenced Dunning to 10 years in the Montana State Prison for the felony kidnapping and six months in the Yellowstone County Detention Facility for the misdemeanor sexual assault.  The court set the terms to run concurrently.  The court's written judgment provided that Dunning would be ineligible for parole as a necessary means for the protection of society.  Dunning appeals.

## STANDARD OF REVIEW

¶21    We review a district court's grant or denial of a motion in limine for an abuse of discretion.  *State v. Brasda*, 2003 MT 374, ¶ 14, 319 Mont. 146, ¶ 14, 82 P.3d 922, ¶ 14 (citations omitted).  We review a district court's rulings on a discovery matter for abuse of discretion.  *In re S.C.*, 2005 MT 241, ¶ 16, 328 Mont. 476, ¶ 16, 121 P.3d 552, ¶ 16.  A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice.  *Brasda*, ¶ 14.

¶22    The law grants broad discretion to trial judges to determine the appropriate punishment for offenses.  *State v. Oie*, 2007 MT 328, ¶ 8, 340 Mont. 205, ¶ 8, 174 P.3d 937, ¶ 8 (citations omitted).  We will not review a sentence for mere inequity or disparity.  *Oie*, ¶ 8.  We will review a criminal sentence only for its legality.  *Oie*, ¶ 8.  A trial court's statutory interpretation presents a question of law that we review to determine whether it is correct.  *Oie*, ¶ 8.

## DISCUSSION

7

¶23    *Whether the District Court abused its discretion by granting the State's motion in limine to limit inquiry into earlier statements by the alleged victim.*

¶24    The State sought to preclude Dunning from allowing the jury to hear testimony of Owen that M.K. falsely had claimed to have been pregnant at some earlier time. The State also sought to limit cross-examination of M.K. regarding the same subject. The State argues that this testimony and cross-examination was irrelevant, would have been prejudicial, and would have confused the issues before the jury. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. Evidence that is relevant may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. M. R. Evid. 403.

¶25    Dunning sought to offer Owen's testimony of M.K.'s alleged claim of a previous pregnancy to cast doubt upon M.K.'s truthfulness. M. R. Evid. 608 generally prohibits attacks on a witness's character and credibility through specific instances of conduct. M. R. Evid. 608 makes an exception if the specific instances of conduct are probative of the witness's "truthfulness." The truth as to M.K.'s alleged past claim of pregnancy is irrelevant as to whether Dunning fondled M.K. while he restrained her. Owen's proposed testimony regarding M.K.'s claim of having been pregnant in the past would have served no probative purpose as to whether M.K. was telling the truth regarding Dunning's sexual assault. Moreover, the possibility of Owen's testimony prejudicing the jury outweighs the

8

testimony's probative value under M. R. Evid. 403. *State v. Grixti*, 2005 MT 296, ¶ 21, 329 Mont. 330, ¶ 21, 124 P.3d 177, ¶ 21.

¶26 Dunning contends that the issue is not whether M.K. had been pregnant when she allegedly had told Owen, but whether she actually was telling the truth about a condition she was holding herself out to be. Dunning argues that he should have been allowed to explore this line of questioning to enable the jury to determine whether it bears on M.K.'s credibility. Dunning claims that the court's limit on cross-examination regarding M.K.'s previous claim to Owen of having been pregnant restricted Dunning's right to confront witnesses. The Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee a criminal defendant the right to confront witnesses. Nothing in the Sixth Amendment or Article II, Section 24 guarantees, however, that a defendant may confront a witness with irrelevant evidence.

¶27 The court allowed Dunning to cross-examine M.K. about a variety of subjects. The court also allowed Dunning to ask Owen about whether M.K. had been welcome to stay at his apartment. Owen's mere assertion that he had seen M.K. pull a feminine hygiene product out of her backpack at a time when she allegedly claimed to have been pregnant would not have established the fact M.K. was untruthful. Owen's testimony would have been an improper attack on her character with irrelevant evidence. *State v. MacKinnon*, 1998 MT 78, ¶ 39, 288 Mont. 329, ¶ 39, 957 P.2d 23, ¶ 39. The District Court did not abuse its discretion in granting the State's motions to preclude Dunning from questioning Owen about M.K.'s alleged claim of a previous pregnancy. *Brasda*, ¶ 14.

9

¶28    *Whether the District Court abused its discretion by granting the State's motion to depose the alleged victim.*

¶29    Dunning argues that the District Court abused its discretion in granting the State's motion to depose M.K.  M.K. appeared and testified at the trial.  The State never introduced M.K.'s video-taped deposition at trial.  M.K.'s testimony at trial rendered moot Dunning's challenge to the District Court's decision to approve the State's motion to depose M.K.  *State ex. rel. Miller v. Murray*, 183 Mont. 499, 503, 600 P.2d 1174, 1176 (1979).

¶30    *Whether the District Court abused its discretion by granting the State's motion to excise portions of the alleged victim's deposition.*

¶31    Dunning similarly argues that the District Court abused its discretion when it granted the State's motion to excise portions of M.K.'s deposition.  M.K.'s testimony at trial rendered moot Dunning's challenge to the State's effort to excise portions of M.K.'s videotaped deposition.  *Murray*, 183 Mont. at 503, 600 P.2d at 1176.

¶32    *Whether the District Court abused its discretion by sentencing Dunning to 10 years in Montana State Prison.*

¶33    Dunning argues that the court violated § 46-18-202(2), MCA, when it imposed the parole ineligibility restriction on his sentence without written reasons for the restriction.  Dunning contends that the court based its parole restriction, in its oral pronouncement of sentence, on the fact that Dunning was a level 3 sex offender.  Dunning claims that he had never received a numerical designation and that his current offenses did not warrant a numerical designation.  Dunning requests this Court to remand for resentencing on

10

substantially correct information as required by *State v. Dunfee*, 2005 MT 147, ¶ 50, 327 Mont. 335, ¶ 50, 114 P.3d 217, ¶ 50.

¶34   The State counters that it requested Dunning's parole restriction on the grounds that he represents a complete danger to the community.  The State points out that Dunning's history discloses that he had committed 19 sex-related offenses over a 30-year period, ranging from voyeurism, to obscene phone calls, to sexual assaults, and to indecent exposure. Dunning's misdemeanor sexual offenses escalated into his first felony conviction in 1992.  Dunning has registered as a sex offender since 1993.  Dunning conceded that he has not completed a sex offender treatment program.

¶35   Dunning had undergone a psychosexual evaluation in connection with his first felony conviction in 1992.  The evaluator deemed Dunning to be a high risk to re-offend and not amenable to community treatment.  The 1992 evaluator's conclusion that Dunning represented a high risk to re-offend comports with a level 3 designation under current law. Section 46-23-509(2)(c), MCA.  The 1992 evaluator established that Dunning had multiple victims and multiple offenses, no guilt or remorse, a projection of responsibility on the victim, and little regard for the impact on the victim.

¶36   The 1992 evaluator did not designate Dunning at a specific offender level as the statutory language in place at the time did not require numerical designations.  The legislature amended the statute to require numerical designations after October 1, 1997. Section 46-23-509(5), MCA.  Dunning conceded at the sentencing hearing, however, that he had been designated the equivalent of a level 3 offender following his 1992 conviction.

11

¶37    The court ordered a current psychosexual evaluation of Dunning before the sentencing in this matter. The current evaluator agreed with the 1992 evaluator that Dunning remained a high risk to re-offend. Dunning's repeated offenses since his 1992 felony bears out his propensity to re-offend. In fact, the current evaluator concluded that Dunning's behavior had escalated from hands-off offenses to hands-on offenses. The evaluator strongly recommended that Dunning be sentenced to a long period of supervision.

¶38    Dunning's 1992 evaluation and his 2007 evaluation confirmed his high risk to re-offend, consistent with a level 3 offender. Section 46-23-509(2)(c), MCA. Dunning conceded that his 1992 conviction already had designated him the equivalent of a level 3 offender. Dunning remains an untreated sexual offender with a high risk to re-offend. The factual evidence presented to the court provided a sufficient basis to support the court's conclusion that Dunning warranted the parole restriction for the protection of society. Section 46-18-202, MCA. The district court did not abuse its discretion when it imposed the parole ineligibility sentence. *Oie*, ¶ 8.

¶39    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE