FILED

01/18/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0744

DA 14-0744

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 12

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

JODY JAKE POPE,

    Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 2013-195
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Chad Wright, Chief Appellate Defender, Jennifer Hurley, Assistant Appellate Defender, Helena, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman, Assistant Attorney General, Helena, Montana

        William E. Fulbright, Ravalli County Attorney, Thorin Geist, Deputy County Attorney, Hamilton, Montana

Submitted on Briefs:  November 10, 2016

Decided:  January 18, 2017

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendant Jody Jake Pope appeals the June 27, 2014 order denying his motion for mistrial and the September 18, 2014 judgment imposing certain fees, surcharges and costs by the Twenty-First Judicial District Court, Ravalli County. We address the following issues:

> *Issue One: Whether the District Court erred in determining the State had not violated its disclosure obligations when the State refused to produce a videotaped witness interview based on the claim that it was work product and not exculpatory.*

> *Issue Two: Whether the District Court failed to determine Pope's ability to pay costs and fees before imposing them.*

> *Issue Three: Whether the District Court erred in imposing the information technology user surcharge per count and not per user.*

¶2 We reverse and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On September 30, 2013, the State of Montana charged Pope with attempted deliberate homicide, assault with a weapon, and driving while license suspended or revoked. The State alleged that on September 12, 2013, Pope intentionally struck his then girlfriend, Susan Myers, with his van on Highway 93 in Ravalli County. Pope denied the allegations, claiming that Myers exited the van and, as he drove away, Myers jumped into the road toward the van throwing her drink at the windshield.

¶4 On January 29, 2014, Myers wrote to the District Court stating that Pope "did not hit [her] with his van" and she did not fear him. Myers gave similar exculpatory statements during recorded interviews prior to trial, including a statement to defense counsel that "nothing happened."

2

¶5     During the three weeks preceding the set trial date of June 23, 2014, the State made numerous disclosures that included nearly one hundred pages of documents and three discs. Pope raised the issue of the State's delayed disclosures during the final pretrial conference. Regarding the State's late production of the first responding officer's interview, the District Court granted Pope's request to call Deputy Liechty as a rebuttal witness if necessary. However, regarding the State's late production of a September 26, 2013 jail telephone call between Pope and Myers, the District Court denied Pope's request for its exclusion, noting that the usual remedy would be a continuance, which Pope did not request.

¶6     On June 23, 2014, during jury selection, the State's in-house investigator, James Hulme, interviewed Myers for approximately forty-five minutes. The interview was video-recorded. Hulme explained to Myers that Deputy County Attorney Thorin Geist is the prosecutor and then began asking "Thorin's questions." Hulme began with general background questions regarding Myers' relationship with Pope. Hulme asked Myers whether she recalled going to the hospital on September 12, 2013, what her injuries were, how she hurt her ribs, when she previously hurt her ribs, and whether her ribs had healed before the incident. Hulme then asked Myers open-ended questions about the events on September 12, 2013, and her communications with Pope following the incident: whether Pope or his counsel told her what to say; whether Pope's letters to her discussed the incident; and whether Hulme could view the letters from Pope. Myers replied she had the letters from Pope, but did not remember their contents and expressed concern about giving the letters to Hulme.

3

¶7     Hulme informed Myers that Pope refused a plea agreement and read her portions of a recorded jail telephone call transcript between Pope and a mutual friend, in which Pope stated that he gave up everything for Myers, that he pawned all his stuff for Myers, that Myers has what little he has left, and that his mother is upset Myers has his TV. Myers disputed Pope's statements. Myers claimed during her interview with Hulme she had a "bad broken rib" from the incident; that Pope drove the van at her quickly; that she was on the side of the street, not in it, when the van approached; that she tried to move out of the way of the van; and that she thinks she was knocked unconscious. Towards the end of the interview, Myers asked Hulme, "Am I supposed to call [Pope's counsel] up and tell her I'm not gonna meet with her?  I'm not supposed to be meeting with her?" to which Hulme replied, "It's not that you're not supposed to be meeting with her, but it would be a lot better if [Geist] were there."

¶8     After the court proceedings that day, Geist viewed the video recording of Hulme's interview with Myers and concluded the State would not disclose the video on grounds that it was not "exculpatory" and it would not be used at trial. That evening Geist informed Pope's counsel, Jennifer Streano, that Hulme had met with Myers, at which time Streano requested to interview Hulme to discover what Myers said. Geist refused, and did not inform Streano at that time that the interview was recorded. Streano attempted to re-interview Myers, without success. The trial resumed the next morning. Later that day, Geist informed Streano shortly before Myers was to testify that the State recorded the interview with Myers. Streano brought the issue to the District Court's

4

attention, requested the State produce the video, and asked the District Court for time to review it before Myers testified.

¶9     The State objected to producing the video, and argued to the District Court that the rules, citing § 46-15-322, MCA, required it to produce only the names and contact information for testifying witnesses and only exculpatory material. Since Myers' statements were not exculpatory, the State contended it did not have to produce the video. Pope argued that the discovery statutes require the State to produce all witness statements, regardless of whether the statements are exculpatory or inculpatory. Pope's counsel asserted she needed to see the video "so I can adequately cross-examine Ms. Myers." The District Court denied Pope's request to view the video on the grounds that it did not contain exculpatory evidence, and because the recorded interview may be "work product."

¶10    Following the District Court's ruling, the State called Myers to the stand. Myers testified consistently with her previous day's interview with Hulme and inconsistently with her previous statements to Pope, his defense counsel, and the District Court. Myers testified that she and Pope had been fighting on the day of the incident and that she got out of the van and crossed the street. She testified that Pope "drove the van at me on the other side [of the street]" and "tried to hit me with the van." Myers stated she was unsure if Pope actually hit her with the van, but that she was knocked unconscious and injured her ribs.

¶11    During cross-examination, Myers denied her previous rib injuries occurred during a fall while camping. She also denied that she was on benzodiazepines or intoxicated the

5

day of the incident. When questioned about her previous statements that she was bipolar and especially emotional the day of the incident, Myers testified she "just said that to try to help." Myers also testified she felt defense counsel had "tricked" her.

¶12 After the State rested its case, Pope reasserted his position that the State should have provided the video of Myers' interview before Myers' testimony. Pope's counsel stated that she was caught "completely off guard" by Myers' testimony and that the testimony "was the first time [Pope's counsel had] ever heard this version of events, and [she] was unable to properly prepare to impeach [Myers'] credibility because [Pope's counsel] did not know that [Myers] was going to be changing her story 180."

¶13 After the parties settled jury instructions, Pope's counsel asked to view the video overnight to determine if there were issues she should raise with the District Court to preserve for appeal. The District Court put the video recording in the record, but concluded it could not order the State to produce the recording if the State opposed production. The State again refused to produce the video, arguing it was work product made in preparation for trial. The State represented the video reflected Myers stating "essentially the same as what she testified to [at trial,]" and the District Court agreed that the testimony seemed inculpatory and ruled that the State was not required to produce the video.

¶14 Before the trial resumed the next morning, Pope moved for a mistrial as a sanction pursuant to § 46-15-329(5), MCA, on the grounds that the State failed to disclose the witness statement. Citing the prosecution's disclosure obligations under §§ 46-15-322 and -327, MCA, Pope argued that the interview did not meet the definition of work

6

product under § 46-1-202(31), MCA. Pope asserted that with timely knowledge of Myers' changed testimony, he may have presented his case differently. Specifically, Pope's counsel contended she could have addressed Myers' recantation during her opening and examined witnesses differently. The State reiterated its position that the video was work product and not discoverable. The District Court agreed with the State, and ruled that § 46-15-322, MCA, applied only to exculpatory information, which it determined the video did not contain. Later, the District Court issued a written order denying the motion for a mistrial, on the grounds that the interview was work product that contained no exculpatory information.

¶15 The jury found Pope not guilty of attempted homicide, but guilty of assault with a weapon and driving while license suspended or revoked. During sentencing, Pope argued he was unable to pay the fees recommended in the presentence investigation (PSI). The District Court sentenced Pope on the assault charge to the Department of Corrections (DOC) for twenty years, with ten years suspended, and on the driving while license suspended or revoked charge to the Ravalli County Detention Center for six months, to run consecutively to the DOC sentence. The District Court imposed $1,005 in fees and costs: $800 for appointed counsel; $100 for prosecution costs; a $50 victim surcharge; $35 in conviction surcharges; $20 in court information technology (IT) user surcharges; and a $100 per day probation supervision fee. Pope timely appealed.

## STANDARDS OF REVIEW

¶16 We review a district court's decision regarding matters of discovery for abuse of discretion. *State v. Golder*, 2000 MT 239, ¶¶ 7, 11, 301 Mont. 368, 9 P.3d 635. A

7

district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *State v. Dunning*, 2008 MT 427, ¶ 21, 347 Mont. 443, 198 P.3d 828. Statutory interpretation is a question of law that we review to determine whether a district court is correct. *Dunning*, ¶ 22.

¶17 We review for legality a criminal sentence imposing over one year of incarceration. *State v. Moore*, 2012 MT 95, ¶ 10, 365 Mont. 13, 277 P.3d 1212. We review de novo whether the district court adhered to the applicable sentencing statute. *Moore*, ¶ 10.

## DISCUSSION

¶18 *Issue One: Whether the District Court erred in determining the State had not violated its disclosure obligations when the State refused to produce a videotaped witness interview based on the claim that it was work product and not exculpatory.*

¶19 Pope argues the District Court erred by relying on the State's incorrect representation of Montana's discovery statutes as only requiring production of witness names and contact information and exculpatory information. Pope contends the State improperly withheld the video-recorded interview, which is evidence of Myers recanting her previous statement to defense counsel, in violation of § 46-15-322, MCA, that obligates the State to disclose all witness statements regardless of whether the statements are exculpatory or inculpatory. Pope asserts remand is required for the District Court to hold a factual hearing to properly assess the State's discovery violations and what sanctions, if any, are appropriate including whether Pope is entitled to a new trial.

¶20 The State concedes on appeal that it was required to produce the recorded interview of Myers upon Pope's request. However, the State argues that Pope cannot

8

demonstrate that the State's failure to produce the interview prejudiced his defense. The State maintains that the interview contains no exculpatory information favorable to Pope's defense, and that there was no unfair surprise because Myers' recorded statement is consistent with her original statements to medical personnel and her testimony at trial. The State asserts, therefore, that there is no reasonable probability that its withholding the video affected the outcome of Pope's trial.

¶21 Section 46-15-322, MCA, provides "the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control . . . the names, addresses, *and statements* of all persons whom the prosecutor may call as witnesses in the case in chief." Section 46-15-322(1)(a), MCA (emphasis added). Parties have a statutory "continuing duty to disclose":

> If at any time after a disclosure has been made any party discovers additional information or material that would be subject to disclosure had it been known at the time of disclosure, the party shall promptly notify all other parties of the existence of the additional information or material and make an appropriate disclosure.

Section 46-15-327, MCA. A "statement" is defined as "(a) a writing signed or otherwise adopted or approved by a person; (b) *a video or audio recording of a person's communications* or a transcript of the communications; and (c) a writing containing a summary of a person's oral communications or admissions." Section 46-1-202(26), MCA (emphasis added). "The prosecutor's obligation of disclosure extends to material and information in the possession or control of members of the prosecutor's staff . . . ." Section 46-15-322(4), MCA.

9

¶22 The purpose of Montana's discovery statutes is to enhance the search for truth "by granting full notification of each side's case-in-chief so as to avoid unnecessary delay and surprise at trial." *State v. Waters*, 228 Mont. 490, 495, 743 P.2d 617, 620-21 (1987) (citations and quotation marks omitted). "The policy behind § 46-15-322, MCA, is to provide notice and prevent surprise." *State v. Stewart*, 2000 MT 379, ¶ 22, 303 Mont. 507, 16 P.3d 391. In criminal cases, discovery serves "to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process . . . ." *State v. Burns*, 253 Mont. 37, 40, 830 P.2d 1318, 1320 (1992) (quoting *ABA Discovery and Procedure Before Trial*, § 1.2 (1974)). Continued disclosures prevent surprise at trial. *Stewart*, ¶ 22 (holding the State violated its continuing duty of disclosure for failing to produce evidence before trial and the district court erred by admitting that evidence).

¶23 Although, § 46-15-322(1)(e), MCA, expressly mandates the State produce all material and information that is considered "exculpatory", the plain language of subsections (1)(a) through (d) and (2)(a) through (c), obligates the State to disclose *all material* and information listed whether exculpatory or inculpatory. *State v. Licht*, 266 Mont. 123, 129, 879 P.2d 670, 673-74 (1994). "It is not up to the State or its agents to determine whether any such material or information is inculpatory or exculpatory; the legislature has left that decision to the defendant." *Licht*, 266 Mont. at 129, 879 P.2d at 674-75.

¶24 Moreover, witness statements are not within the scope of work product protected from disclosure under § 46-15-324, MCA, because § 46-15-322(a), MCA, explicitly

10

requires production of all witness statements. The Legislature chose to narrow the definition of "work product" in the criminal code to: "legal research, records, correspondence, reports, and memoranda, both written and oral, to the extent that they contain the opinions, theories, and conclusions of the prosecutor, defense counsel, or their staff or investigations." Section 46-1-202(31), MCA. In contrast, the civil code broadly provides "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial . . . ." M. R. Civ. P. 26(b)(3)(A). Had the Legislature intended to protect witness statements "prepared in anticipation of litigation" in criminal cases, as in civil cases, it would have included witness statements in the definition of work product. *See In re T.N.-S*, 2015 MT 117, ¶ 36, 379 Mont. 60, 347 P.3d 1263 ("When the legislature includes language in one part of a statute, but omits it from a related statute or another part of the same statute, the omission is presumed to be intentional.").

¶25 District courts are endowed with the authority to impose sanctions commensurate with the failure to comply with the discovery statutes:

> If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with any of the provisions of this part or any order issued pursuant to this part, the court may impose any sanction that it finds just under the circumstances, including but not limited to:
>     (1) ordering disclosure of the information not previously disclosed;
>     (2) granting a continuance;
>     (3) holding a witness, party, or counsel in contempt for an intentional violation;
>     (4) precluding a party from calling a witness, offering evidence, or raising a defense not disclosed; or
>     (5) declaring a mistrial when necessary to prevent a miscarriage of justice.

Section 46-15-329, MCA. The State concedes it wrongfully withheld Myers' video-recorded statement. There is no question, therefore, that the District Court erred when it denied Pope's request that the State be ordered to produce it. Although the State argues it should not be sanctioned for wrongfully withholding the statement because, it contends, Pope was not prejudiced, that is not for this Court to assess at this juncture. "Imposition of sanctions is a matter best left to the sound discretion of the district court. Such discretion allows the court to consider the reason why disclosure was not made, whether noncompliance was willful, the amount of prejudice to the opposing party, and any other relevant circumstances." *Waters*, 228 Mont. at 495, 743 P.2d at 621.

¶26 It makes little sense that a party could commit a discovery abuse at trial, admit it on appeal, and then argue that its discovery abuse should not even be reviewed for imposition of an appropriate sanction. Although many of the specifically enumerated sanctions in § 46-15-329, MCA, are no longer applicable, the statute expressly does not limit the available sanctions to those enumerated. Rather, the statute prescribes that the court may "impose *any* sanction that it finds just under the circumstances." Section 46-15-329, MCA (emphasis added).

¶27 The State wrongfully withheld Myers' video-recorded statement. The District Court erred when it denied Pope's request that the State be ordered to produce Myers' video-recorded statement. We remand to the District Court to determine the appropriate sanctions for the State's discovery abuse.

12

¶28     *Issue Two: Whether the District Court failed to determine Pope's ability to pay costs and fees before imposing them.*

¶29     As noted above, when the District Court considers the appropriate sanction to impose on remand, it may impose any sanction that it finds just under the circumstances. Within that panoply of options are sanctions which may or may not render this issue moot. Without speculating on what sanction the District Court may find to be just under the circumstances on remand, we conclude it is premature to address this issue at this time.

¶30     *Issue Three: Whether the District Court erred in imposing the information technology user surcharge per count and not per user.*

¶31     As with Issue Two, our resolution of whether the District Court erred by imposing the IT user surcharge per count may be rendered moot depending upon what sanction the District Court may find to be just under the circumstances on remand. However, the State concedes the imposition of the IT user surcharge per count and not per user is illegal under § 3-1-317(a), MCA. We agree.

¶32     The District Court imposed "Court Technology Fees" totaling $20—two $10 fees for each count on which Pope was convicted—pursuant to § 3-1-317(a), MCA. The statute authorizes all courts to impose "on *a defendant* in criminal cases, a $ 10 *user* surcharge for any conduct made criminal by state statute . . . ." Section 3-1-317(1)(a), MCA (emphasis added). The plain language of the statute titled "User Surcharge for court information technology" implies the surcharge is authorized *per user* upon

13

conviction, and not per conviction of that user. The District Court erred when it imposed the "Court Technology Fees" per count instead of per user.

## CONCLUSION

¶33 The State concedes it wrongfully withheld Myers' video-recorded statement. The District Court erred when it denied Pope's request that the State be ordered to produce Myers' video-recorded statement. We remand to the District Court to determine the appropriate sanctions for the State's discovery abuse.


/S/ JAMES JEREMIAH SHEA


We Concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR


Justice Jim Rice, concurring in part and dissenting in part.


¶34 "A cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial." Section 46-20-701(1), MCA. Although the Court concludes that prejudice arising from the discovery error cannot be assessed at this juncture, Opinion, ¶ 25, I believe that this Court can and must make that assessment under the statute. The Court is remanding this case to the District Court, which will be faced with an inevitable request by Pope for reversal of the judgment and a new trial. This procedure is unnecessary and unwarranted.

14

¶35 Myers was the alleged victim of an intra-relational crime of violence, involving the not-uncommon occurrence where the victim recanted her original report and gave inconsistent statements about the incident. What Myers would testify to at trial remained uncertain—even after her recantation of her first recantation during the interview with Hulme—but she ultimately testified similarly to her original report. The defense was aware of Myers' inconsistent statements and aware of her expressed hostility toward the defense shortly before Myers testified. The defense cross-examined Myers about the versions of her story. The jury assessed Myers' conflicting statements and rejected the most serious charge against Pope, attempted deliberate homicide. I do not believe Pope was prejudiced under these circumstances, and would not remand this matter to the District Court for consideration of discovery sanctions under Issue 1. Rather, I would affirm the conviction.

¶36 With respect to issue three, I concur with the Court's opinion.

/S/ JIM RICE

Chief Justice Mike McGrath and Justice Beth Baker join in the concurring and dissenting Opinion of Justice Rice.

/S/ MIKE McGRATH
/S/ BETH BAKER

15